**UNITED STATES STEEL CORPORA-
TION, a corp., Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERI-
CA et al., Defendants.**

**Civ. A. No. 73-G-1075-S.**

United States District Court,
N. D. Alabama, S. D.

June 17, 1974.

M. L. Taliaferro, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for plaintiff.

Jack Drake, Drake, Knowles & Still, University, Ala., William E. Mitch, Cooper, Mitch & Crawford, Birmingham, Ala., Harrison Combs and Joseph A. Yablonski, Jr., Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This cause came on to be heard upon the motion of the plaintiff for an adjudication that defendants District 20, United Mine Workers of America; United Mine Workers of America, Local No. 8982 are in civil contempt of this court by reason of their having violated and disobeyed, and continuing to violate and disobey the Preliminary Injunction issued by this court as amended on May 30, 1974 * after a hearing held on May 17, 1974; and the court having on June 17, 1974 issued an order requiring defendants to show cause why they should not be adjudged in civil contempt of this court as prayed in said motion; a hearing on said order to show cause was duly held on June 17, 1974. All parties were offered full opportunity to be heard, to present evidence on the issues, to argue on the evidence and the law. The plaintiff appeared by its attorneys M. L. Taliaferro and Mark Taliaferro, Jr. and the defendants District 20, United Mine Workers of America; United Mine Workers of America, Local No. 8982 appeared by their attorney John Falkenberry. This court having duly considered the pleadings, evidence, briefs and arguments of counsel and the entire record in this case makes the following:

## FINDINGS OF FACT

1. On May 30, 1974 this court issued a Preliminary Injunction as amended enjoining the defendants and each of them, their officers, agents and members and all persons acting in combination or concert with any of them, or aiding and abetting them until midnight, November 11, 1974, or until further Order of this Court from engaging in any strike or work stoppage at plaintiff's Concord Mine, or enlarging or extending any strike or work stoppage at Concord Mine to Oak Grove Mine over any disagreement about the interpretation or application of the collective bargaining agreement between the parties or any disagreement over any matter not mentioned in said agreement, or over local trouble of any kind, and from inducing or encouraging any of plaintiff's employees to engage in such a strike or work stoppage by word of mouth, sign, signal, vote, advice or device of any kind, or in any other manner interfering with the business of plaintiff as a means of settling any such disagreement in a manner other than set out in the collective bargaining agreement, provided that as a condition to the issuance of this Preliminary Injunction plaintiff is enjoined when requested by the defendants to handle any such dispute or disagreement under the grievance and arbitration provisions of the collective bargaining agreement.

2. The defendants have been served with said Preliminary Injunction and on the 4th day of June, 1974 have filed an appeal from said Preliminary Injunction without superceding it.

3. After the issuance of the Preliminary Injunction and while said Injunction was in full force and effect a work stoppage occurred at the plaintiff's Oak Grove Mine on Saturday, June 15, 1974 beginning at 12:01 A.M. and ending with the next shift. Plaintiff's Oak

---

* See Appendix.

Grove Mine again struck at 12:01 A.M. and plaintiff's Concord Mine also struck at 12:01 A.M. on Monday, June 17, 1974 and said strike was continuing at both mines at the time of the hearing on said order to show cause.

4. The Court finds that a claimed memorial period had been called by the defendants and would last for 24 hours or until 12:01 A.M. on Tuesday, June 18, 1974. The Court finds that a dispute governed by the collective bargaining agreement between the parties exists concerning the right of the defendants to strike protesting the importation of South African coal by The Southern Company.

5. The Court finds that substantially all of plaintiff's employees on the first two shifts for June 17, 1974 had failed to report to work and that said work stoppage by the defendants causes a loss to the plaintiff which exceeds Four Thousand Dollars per shift.

6. Although the defendants contend that the motive of this strike is not covered by the collective bargaining agreement between the parties the Court finds that the defendants are attempting to circumvent its Order and are striking in violation of the collective bargaining agreement and have failed to take such action as is reasonable and appropriate to bring about compliance with this Court's Preliminary Injunction.

## CONCLUSIONS OF LAW

1. The Preliminary Injunction was duly issued by the Court which had jurisdiction over the parties and the subject matter under 29 U.S.C.A. § 185 and notice thereof was duly communicated to the defendants on or before June 4, 1974, the date their appeal was filed. The strike which began at 12:01 A.M. on June 17 and has continued through the time of the hearing in this cause is a violation of the Preliminary Injunction.

2. Defendants are responsible for said strike in violation of the Preliminary Injunction because of the authorization of the work stoppage over a dispute concerning the defendants' right to strike, protesting the importation of South African coal by The Southern Company and because of the actual participation therein by their officers and members who are agents acting within the line and scope of their authority.

3. Issuance of an adjudication and order in civil contempt against the defendants is appropriate because of the defendants' acts herein which have been found to constitute civil contempt of this court's Preliminary Injunction.

## ADJUDICATION AND ORDER IN CIVIL CONTEMPT

United States Steel Corporation, plaintiff in the above cause, having duly petitioned this Court for an order adjudicating defendants, District 20, United Mine Workers of America and United Mine Workers of America, Local 8982, in civil contempt of this Court by reason of disobedience of and failure and refusal to comply with the Preliminary Injunction entered by this Court on the 30th day of May, 1974; and this Court having, on June 17, 1974, ordered the said defendants to appear before this Court and show cause why they should not be adjudged in civil contempt in this Court, and the matter having come on for hearing before the Court on June 17, 1974, and defendants having appeared by counsel and having been afforded the full opportunity to offer evidence and to argue on the law and the facts; and it having been determined that this Court shall make findings of fact and conclusions of law and enter such order as is warranted by the evidence before the Court; now, therefore, upon all the pleadings and proceedings heretofore had herein, it is hereby:

Ordered, adjudged and decreed that defendants, District 20, United Mine Workers of America and United Mine Workers of America, Local No. 8982, are and have been and are hereby adjudged to be, in civil contempt of this Court by reason of their disobedience of and their failure and refusal to comply with, the

Preliminary Injunction issued by this Court on May 30, 1974, and it is further

Ordered, adjudged and decreed that said defendants, District 20, United Mine Workers of America and United Mine Workers of America, Local No. 8982, shall purge themselves of their said civil contempt of this Court by fully complying with all of the provisions of this Court's Preliminary Injunction issued on May 30, 1974, and it is further

Ordered, adjudged and decreed that in the event of the failure or refusal of the defendants, District 20, United Mine Workers of America and United Mine Workers of America, Local No. 8982, to comply with the purgation provisions in this order, defendants shall pay to the plaintiff a civil fine of Twelve Thousand Dollars ($12,000) if seventy-five percent (75%) of the members of defendant United Mine Workers of America, Local No. 8982 employed by the plaintiff at its Concord and Oak Grove Mines who are scheduled to work at 4:00 P.M. on June 17, 1974, fail to report to work; and beginning with the shift scheduled for work at 12:00 A.M. June 18, 1974, and each shift thereafter, defendants, District 20, United Mine Workers of America and United Mine Workers of America, Local No. 8982, shall pay a civil fine of Four Thousand Dollars ($4,000) per shift to the plaintiff if seventy-five percent (75%) of the members of defendant United Mine Workers of America, Local No. 8982 employed by the plaintiff at its Concord and Oak Grove Mines fail and refuse to work, and if said civil contempt continues, the Court will deal further with the imposition of such civil fines by such further means and orders as the Court shall then determine.

## APPENDIX

## AMENDED PRELIMINARY INJUNCTION

This cause duly came on to be heard at 1:00 P.M. on May 17, 1974 before the undersigned on the plaintiff's verified application for preliminary injunction contained in its original complaint; and upon the verified motion for further preliminary injunctive relief contained in plaintiff's motion filed on May 9, 1974, which motion the court treats as an amendment to the complaint. The plaintiff appeared by its attorneys M. L. Taliaferro and C. V. Stelzenmuller; and defendants by their attorneys Jack Drake and William E. Mitch. The Court having considered the verified complaint and the verified motion, the answer and oral testimony offered at the hearing, documentary evidence and argument of counsel, is of the opinion that the plaintiff is entitled to the preliminary injunctive relief herein granted and makes the following:

## FINDINGS OF FACT

1. Plaintiff, United States Steel Corporation, is a corporation organized and existing under the laws of the State of Delaware, and is duly qualified and authorized to do business in the State of Alabama. Plaintiff owns and operates a coal mine known as Concord Mine in Jefferson County and owns and operates other plants and industrial facilities in Jefferson County, Alabama and in other states in which it is engaged in the production of steel, coke, chemicals and other products. Plaintiff also owns and is in the process of commencing production at a coal mine in Jefferson County, Alabama approximately 5 miles away from Concord Mine, which is known as the Oak Grove Mine. At its Concord Mine plaintiff employs over 800 persons, and at other industrial plants and facilities in Jefferson County, it employs many thousands of employees, and in its said operations in Jefferson County, Alabama plaintiff ships over $50,000 annually of goods to customers located outside the State of Alabama.

2. Defendant, United Mine Workers of America, is an unincorporated labor association having its principal office at 900 15th Street, N.W., Washington, D. C. Its duly authorized officers or agents, locals or branches, are engaged

in representing or acting for employee members within this jurisdiction.

3. Defendant District 20 United Mine Workers of America, is an unincorporated labor organization and is an administrative division of the United Mine Workers of America, having an office in the City Federal Building at Second Avenue and 21st Street, North, in the City of Birmingham, Alabama and is engaged in representing or acting for employee members of the United Mine Workers employed at plaintiff's Concord Mine located within this judicial district.

4. Defendant United Mine Workers of America Local No. 8982, is an unincorporated labor association and is affiliated with the aforesaid defendant United Mine Workers of America, and said District 20, United Mine Workers of America. Said Local has a mailing address of Bessemer Labor Temple, 1111 North 19th Street, Bessemer, Alabama. Said Local is engaged in representing or acting for the members of the defendant United Mine Workers of America employed at plaintiff's Concord Mine located within this judicial district.

5. The plaintiff and each of defendants are parties signatory to and are bound by a collective bargaining agreement entered into between the plaintiff and the United Mine Workers of America, known and entitled "National Bituminous Coal Wage Agreement of 1971," hereinafter referred to as the collective bargaining agreement.

6. For many years defendant United Mine Workers of America has been the exclusive collective bargaining representative of certain non-supervisory employees at plaintiff's Concord Mine for the purpose of collective bargaining over wages, hours and working conditions and for many years there have been in effect collective bargaining agreements between the defendant United Mine Workers of America and plaintiff covering approximately 767 persons employed by plaintiff at its Concord Mine. The collective bargaining agreement present-

ly in effect and covering said employees at the Concord Mine became effective on November 12, 1971 and by its terms will continue in full force and effect until November 12, 1974, and is not subject to termination by any party to said collective bargaining agreement prior to November 12, 1974.

7. Said collective bargaining agreement dated November 12, 1971, contains a mandatory and detailed grievance and arbitration procedure for the settlement of grievances and disputes, which reads as follows:

Should differences arise between the Mine Workers and the Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest possible time . . . :

1. By the aggrieved party and his foreman who shall have the authority to settle the complaint. Any grievance which is not filed by the aggrieved party within fifteen calendar days after he reasonably should have known of such grievance shall be considered invalid and not subject to further prosecution under the grievance machinery.

2. If no agreement is reached, the grievance shall be taken up by the Mine Committee and mine management within five calendar days of the conclusion of Step 1. A standard grievance form shall be completed and jointly signed by the parties to the grievance. Such a form will be agreed upon by the parties.

3. If no agreement is reached, the grievance shall be taken up by the UMW District Representative and a designated representative of the Employer within ten calendar days of the conclusion of Step 2.

4. If no agreement is reached, the grievance shall be taken up by the Board within ten calendar days of the conclusion of Step 3, or in discharge cases, within five calendar days of notice of appeal. The Board shall consist of four members, two of whom shall be designated by the Union and two by the Employer. Neither the Union's representatives on the Board nor the Employer's representatives on the Board shall be the same persons who participated in Steps 1, 2, or 3 of this procedure.

5. Should the Board fail to agree the matter shall, within ten (10) calendar days after decision by the Board, be referred to an umpire who shall expeditiously and without delay decide said case. The decision of the umpire shall be final. Expenses and fees incident to the services of an umpire shall be paid equally by the Employer or Employers affected and by the Union.

A grievant shall have the right to be present at each step, if he so desires, of the foregoing procedures until such time as all evidence is taken.

A decision reached at any stage prior to Step 5 of the proceedings above outlined shall be reduced to writing and signed by both parties. The decision shall be binding on both parties hereto and shall not be subject to reopening except by mutual agreement.

8. At approximately 12:00 midnight on the 12th day of November, 1973, the defendants began a work stoppage at the Concord Mine. The grievance or complaint over which this work stoppage occurred was that rags were not furnished by plaintiff to some parts of the mine and that this constituted a safety hazard. The plaintiff requested the workers to go to work and said there would be plenty of rags available shortly but the employees refused to go to work and left the mine. The defendants were promptly notified that shortly after midnight rags in ample supply were placed in the mines. After such notification, however, employees scheduled to work on the 8 o'clock shift failed to report. On the midnight shift at midnight on November 12, 50 men did report and 150 scheduled to report failed to report. At 8 o'clock A.M. on November 13 ample rags were available and 4 out of 10 sections were working and 6 remained closed.

9. As shown by the records of this Court, a Temporary Restraining Order was issued restraining the continuation of said strike at 5:43 P.M. on November 13, 1973. Defendants' counsel was immediately notified thereof and copy of the Temporary Restraining Order was promptly served on defendants. This work stoppage ended on the following midnight having lasted 24 hours.

10. The Temporary Restraining Order issued on November 13, 1973 has been duly extended from time to time and has remained in effect continually ever since. Nevertheless there have been two further work stoppages which have closed down the Concord Mine. On April 12, 1974 there was a work stoppage which lasted 24 hours. The occasion for the work stoppage was that an employee at Concord Mine who had become sick at work died while being taken to the hospital. An autopsy showed that he died of ·natural causes having nothing to do with his employment. On May 9, 1974 at 8:00 A.M. all the underground employees of Concord Mine went on strike. This strike lasted until May 13, 1974. The occasion for this strike had to do with the employment of certain miners at Oak Grove Mine, which had been turned over by contractors to plaintiff on May 9 upon the substantial completion of their construction work. Plaintiff offered certain skilled miners on that date work at Oak Grove Mine to commence additional developmental or preparatory work so as to ready Oak Grove Mine for regular operation. The defendant unions had sought to persuade plaintiff to treat the Oak Grove Mine as the same seniority unit as Concord Mine so as to post vacancies for filling accord-

ing to seniority rules applicable to Concord Mine. The plaintiff preferred to select those employees who were willing to transfer who had the most skill for the developmental work necessary and inasmuch as the collective bargaining contract provides for measurement and application of seniority according to length of continuous service at a particular mine, it offered certain employees theretofore employed at Concord, work at the Oak Grove Mine. This action was a matter which was subject to review through the grievance and arbitration proceedings of the contract applicable to Concord Mine. The Court finds that the disagreement over manning the Oak Grove Mine was the cause or occasion of the work stoppage which began on May 9, 1974.

11. On that date plaintiff filed a motion in this action for an order to show cause directed to defendants why they should not be adjudicated in civil contempt for a violation of the November 13, 1973 Temporary Restraining Order, and jointly, severally, and in the alternative for a modification or amendment of the Temporary Restraining Order so as to make it expressly applicable to the work stoppage then in progress. This motion was presented to the Honorable Sam C. Pointer, Jr., United States District Judge, and at 2:32 P.M. on May 9, 1974 a further Temporary Restraining Order was issued restraining the strike or work stoppage then current at Concord Mine and restraining defendants from enlarging or extending that work stoppage to the Oak Grove Mine. Counsel for defendants was present at the granting of this second Temporary Restraining Order and its provisions were promptly communicated to defendants.

12. However, the work stoppage continued after issuance and service of the second Temporary Restraining Order for the entire day of May 10 and 11, 1974. The undersigned issued an order to show cause to defendants on May 10, 1974 which order was promptly served on May 10. Nevertheless the work stoppage continued on Saturday, May 11

which was a scheduled working day. Sunday, May 12 was not a scheduled working day and on Monday, May 13, 1974 approximately two-thirds of the midnight shift returned to work and approximately 90% of the 8:00 A.M. shift at Concord Mine returned to work. The May, 1974 work stoppage resulted in a total shutdown of underground operations at Concord Mine for two and two-thirds days of scheduled work.

13. In addition to the three work stoppages referred to in the above findings, all of which the Court finds were matters coming within the broad terms of the grievance and arbitration provisions in the contract, there have been other strikes at Concord Mine during the current collective bargaining contract: There was a work stoppage on March 24, 1972 which ended March 27, 1972, only one of which days was a working day. The occasion for this strike was the death of an employee in a mine accident on March 23, 1972. There was a further strike at Concord Mine on December 19, 1972 which lasted 24 hours concerning an employee's qualifications for a vacancy. A Temporary Restraining Order restraining defendants from engaging in this strike was issued on December 20, 1972 by the Honorable Clarence Allgood, United States District Judge, Civil Action No. 72–1121, and this strike ended at 4:00 P.M. on that date. That Temporary Restraining Order was extended by consent from time to time until it was allowed to expire on February 22, 1973 by consent of the parties, it being deemed by them that the Temporary Restraining Order was no longer needed. However, within three weeks after the expiration of this Temporary Restraining Order there were two more work stoppages at Concord Mine. The first of these began at 8:00 A.M. on March 8, 1973 and ended at 8:00 A.M. on March 9, 1973 which was occasioned by a fatal mine accident on March 7, 1973. The second of these began at 8:00 A.M. on March 12, 1973 and lasted until 4:00 P.M. on March 13, 1973 following the issuance of a Temporary

Restraining Order by this Court in Civil Action No. 73–242.

14. This series of strikes over matters covered by the grievance and arbitration clause establish a pattern of conduct which creates a reasonable apprehension that such strikes will be resumed and continue unless effective injunctive relief is granted. In addition, the Court finds that a strong suggestion, if not more aptly characterized as a threat, was made to plaintiff by a member of the Executive Committee of the International Union, on May 14, 1974, that unless plaintiff made concessions to the defendants in the matter of manning the Oak Grove Mine, further work stoppages would be likely to occur; this indicating that the defendants have not relinquished economic force rather than arbitration as a means of resolving such differences.

15. The Court finds that each of these work stoppages mentioned in the above findings were in violation of the grievance and arbitration provisions of the applicable collective bargaining agreements inasmuch as the scope of those provisions applies to differences as to the meaning and application of the provisions of the collective bargaining agreement, differences over matters not mentioned in the agreement, or local trouble of any kind.

16. Each of said strikes has caused substantial injury and damage to plaintiff although the total amount of such damages is difficult of exact ascertainment. In May, 1974 there existed a nationwide fuel shortage. This shortage was made acute by the oil embargo of the petroleum exporting countries, the pollution control regulations which resulted in increased demand for low sulphur coal, by the substitution of coal for oil in many power generation stations and by many other factors. Although prior to recent months the output of Concord Mine was used almost entirely in the Fairfield Works of plaintiff in Jefferson County, Alabama, because of critical shortages of high grade metallurgical coal in other plants of the plaintiff a considerable portion of the output of Concord Mine was in May, 1974 consigned for shipment to the plaintiff's South Works in Chicago, Illinois. The strike in May, 1974 resulted in lost production of approximately 16,000 tons of high grade metallurgical coking coal. The Court finds that said strikes have caused the plaintiff substantial and irreparable injuries for which the legal remedy is inadequate.

The Court finds further that based upon the above findings of fact the employer in this case would suffer more from the denial of an injunction than the union will suffer from its issuance.

On the basis of the foregoing findings, the Court makes the following

## CONCLUSIONS OF LAW

1. Plaintiff is an employer engaged in industry affecting interstate commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

2. Defendants and each of them are labor organizations engaged in representing employees in an industry affecting commerce within the meaning of said statute.

3. Jurisdiction of this action is properly based on said statute.

4. The grievance and arbitration provisions of the collective bargaining agreement constitute an implied no-strike clause. Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

5. The work stoppages of November, 1973 and May, 1974 constituted violations of the collective bargaining agreement. In addition these occurred in the context of a long series of other strikes in violation of the collective bargaining agreement.

6. Defendant Local Union is responsible for said work stoppages because of the active participation therein of its officers and committeemen, and all defendants are responsible therefor on the principle that a labor organization, so long as it is functioning as such, is responsible for the mass action of its employees. Steel Workers v. Vulcan Ma-

**1090**

terials Co., 430 F.2d 446, 455–456 (5th Cir., 1970), cert. den. 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971), and cases cited.

7. The Court recognizes that Boy's Markets, Inc. v. Retail Clerks Union, Local 70, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), only enjoined the strike in progress at the time of the suit. However, the court in *Boy's Markets* also adopted the dissenting opinion in Sinclair Refining Company v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), which set out when injunctive relief would be appropriate despite the Norris-LaGuardia Act. The Court feels that the language of the *Sinclair* dissent, as quoted by *Boy's Markets*, 398 U.S. at 253–254, 90 S.Ct. 1583, 26 L.Ed.2d at 212, is sufficiently broad to allow a prospective injunction of the type herein ordered when the tests as set out by that language are met. The Court is of the opinion that this collective bargaining agreement is so broad as to encompass any situation that could possibly arise between the parties except a good-faith walkout because of a hazard to personal safety. The Court is of the further opinion that based upon the prior practice and pattern of strikes on the part of the union, and the previous disobedience of the temporary restraining orders issued by this Court, that the only way to avoid irreparable injury to the employer in this case is to issue a prospective injunction. While this decision may seem at first glance to go further than allowed by *Boy's Markets*, this Court nevertheless feels that once the tests as set down by *Boy's Markets* are met, as is the case here, then a prohibition against future strikes is warranted, and was contemplated by the author of the *Sinclair* dissent (and therefore, presumably, was contemplated by the Supreme Court in *Boy's Markets*). Why else would the *Sinclair* language be quoted in *Boy's Markets* which requires the District Judge to consider "whether breaches are occurring and will continue, or have been threatened and will be committed." 398 U.S. at 253–254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212.

And it is therefore

Ordered, adjudged and decreed by the Court that upon the plaintiff's filing a bond with the Clerk with good and sufficient surety approved by the Clerk in the amount of ten thousand dollars ($10,000.00) and conditioned as required by Rule 65 of the Federal Rules of Civil Procedure, defendants and each of them, their officers, agents and members and all persons acting in combination or concert with any of them, or aiding and abetting them be and each of them hereby are enjoined and restrained during the pendency of this civil action until midnight, November 11, 1974, or until further order of this Court from engaging in any strike or work stoppage at plaintiff's Concord Mine, or enlarging or extending any strike or work stoppage at Concord Mine to Oak Grove Mine over any disagreement about the interpretation or application of the collective bargaining agreement between the parties or any disagreement over any matter not mentioned in said agreement, or over local trouble of any kind, and from inducing or encouraging any of plaintiff's employees to engage in such a strike or work stoppage by word of mouth, sign, signal, vote, advice or device of any kind, or in any other manner interfering with the business of plaintiff as a means of settling any such disagreement in a manner other than set out in the collective bargaining agreement, provided that as a condition to the issuance of this preliminary injunction plaintiff is enjoined when requested by the defendants to handle any such dispute or disagreement under the grievance and arbitration provisions of the collective bargaining agreement. Provided, further, that the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees will not be deemed a strike under this preliminary injunction. It is further ordered that copies of this Preliminary Injunction be served upon defendants by the United States Marshal.