**UNITED STATES PIPE & FOUNDRY COMPANY, a corporation, Plaintiff,**

v.

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, an unincorporated association, and Local No. 1928, District 20, United Mine Workers of America, an unincorporated association, Defendants.**

Civ. A. No. 75–G–467–S.

United States District Court,
N. D. Alabama, S. D.

June 30, 1975.

John J. Coleman, Jr., James P. Alexander, and Stephen E. Brown, Bradley, Arant, Rose & White, Birmingham, Ala., Charles F. Wilson, Tampa, Fla., for plaintiff.

William E. Mitch, Cooper, Mitch & Crawford, Birmingham, Ala., for Local 1928, UMWA & Dist. 20.

Jack Drake, Drake & Knowles, University, Ala., for International Union, UMWA.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

On April 16, 1975, the plaintiff, United States Pipe and Foundry Company (U. S. Pipe) brought this action against the International Union, United Mine Workers of America (UMWA) and its Local Union Number 1928 (Local 1928). These two defendants represent, for collective bargaining purposes, U. S. Pipe's employees at its No. 3 mine located near Adger, Alabama. The plaintiff sought to enjoin a strike which it alleged was caused by a dispute which the parties had agreed by contract to submit to final and binding arbitration. This court on April 16, 1975, issued a temporary restraining order enjoining the defendants from continuing the work stoppage then in progress and set a hearing for April 18, 1975, on the plaintiff's motion for a preliminary injunction.

On April 18, 1975, the defendants moved to continue the hearing on the plaintiff's motion for a preliminary injunction to permit sufficient time to prepare their case; and the court, over the plaintiff's objection, granted the de-

fendant's motion and set a hearing on the preliminary injunction at 10:00 A. M. on May 23, 1975, the first available time on the court's docket. With the defendant's consent, the court continued the temporary restraining order then in effect until the May hearing.

On May 23, 1975, this cause came on to be heard on the plaintiff's verified application for a preliminary injunction contained in its original complaint and upon its motion for a preliminary injunction. All parties were represented by counsel.

Having considered the complaint, the oral testimony offered at the hearing, documentary evidence including extensive admissions of fact and the depositions of two union officers, and the briefs and argument of counsel, the court is of the opinion that the plaintiff is entitled to a preliminary injunction and makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

### Parties

1. The plaintiff, United States Pipe and Foundry Company, is a Delaware corporation, with its principal place of business in Jefferson County, Alabama. It owns and operates an underground coal mine known as its No. 3 mine near Adger, in Jefferson County, Alabama. The plaintiff has approximately 280 employees represented by the defendant unions working at its No. 3 mine.

2. Most of the coal mined from No. 3 mine is committed by a long-term contract to the Alabama Power Company, and the remainder of the coal is shipped to other purchasers.

3. The defendant, International Union, United Mine Workers of America (UMWA), is an unincorporated labor association in which employees participate, existing at least in part for the purpose of dealing with employers, including the plaintiff U. S. Pipe, concerning grievances, labor disputes, wages, hours, and conditions of work. At all times material to this action, UMWA has been engaged in this judicial district in transacting business and promoting and protecting the interests of its employee members at U. S. Pipe mines in Jefferson County.

4. The defendant, Local Union Number 1928 (Local 1928), is an unincorporated labor association in which employees participate, existing at least in part for the purpose of dealing with U. S. Pipe at its No. 3 mine, concerning grievances, labor disputes, wages, hours, and conditions of work. At all times material to this action, Local 1928 has been engaged in this judicial district in transacting business and promoting and protecting the interests of its employee members at U. S. Pipe's No. 3 mine.

5. In addition to its No. 3 mine, U. S. Pipe operates two other coal mines in Jefferson County, Alabama, known as Bessie Mine and Flat Top Mine. Employees at these two mines are represented by two local unions of the UMWA which are not defendants in this action.

### The Collective Bargaining Agreement

6. The plaintiff and both defendants are bound by a collective bargaining agreement known as the National Bituminous Coal Wage Agreement of 1974 (NBCWA of 1974).

7. The NBCWA of 1974 became effective on December 6, 1974, and will remain in full force and effect until December 6, 1977, and is not subject to termination by either party until its expiration date.

8. The NBCWA of 1974 contains in Article XXIII a mandatory and detailed grievance and arbitration procedure for the settlement of grievances and disputes between the employer and the union or its members. This grievance procedure culminates in final and binding arbitration.

9. Under the dispute settlement procedure contained in the NBCWA of 1974

there is found the following provision relating to grievances:

> Should differences arise between the Mine Workers and the Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time.

This provision is also found in the National Bituminous Coal Wage Agreement of 1971 (NBCWA of 1971), the predecessor labor contract between the parties.

10. The dispute settlement provision in the NBCWA of 1974 provides a four-step procedure which is initiated when a miner brings a complaint to the attention of his foreman. If the miner and his foreman cannot resolve the problem, it is reduced to writing at the second step and discussed by the mine superintendent and the mine committee, which is composed of three miners from the local union. If the mine superintendent and the mine committee cannot resolve the matter, it is referred to the third step, where a representative of mine management and a UMWA district representative meet and attempt to settle the dispute. If not settled there, the dispute proceeds to final and binding arbitration at step four.

11. Prior to November 12, 1974, terms and conditions of employment at No. 3 mine were governed by the NBCWA of 1971, which, like its successor contract, provided for dispute resolution procedures culminating in final and binding arbitration.

12. During the first 60 days after the NBCWA of 1974 became effective, grievances were resolved by the contractual procedures of the NBCWA of 1971.

### The April 1975 Wildcat Strike

13. At approximately 7:00 A.M. on April 16, 1975, members of the defendant unions began a work stoppage at No. 3 mine which continued until 11:00 P.M. on April 18, 1975, suspending mine operations completely for eight production shifts. This work stoppage was in protest over a five-day disciplinary suspension imposed upon miner Steve Morrow, who had been absent for two consecutive work days without prior consent. Any dispute relating to or arising from discipline imposed upon miner Steve Morrow was subject to the mandatory grievance and arbitration procedure of the NBCWA of 1974.

14. A temporary restraining order was issued by this court at 3:15 P.M. on April 16, 1975, enjoining the continuation of the strike. The UMWA was served on April 16, 1975, and Local 1928 was served on April 17, 1975, but the work stoppage at No. 3 mine continued until the commencement of the 11:00 P.M. shift on April 18, 1975.

15. When the strike commenced, neither miner Steve Morrow, nor anyone acting on his behalf, had filed a grievance under the contract provisions. A grievance protesting the suspension of Steve Morrow was filed on April 22, 1975, but the defendants withdrew it from processing at step three. U. S. Pipe has a policy of not meeting with the unions during the course of a strike for the purpose of discussing the underlying grievance, although it has not followed that policy uniformly. During the strike, on April 17, 1975, local union president Louis Johnson, Jr., telephoned the mine superintendent and attempted to arrange a meeting; the plaintiff, choosing to follow its policy, declined to meet with the unions for discussion of the dispute until the work stoppage ended.

### Work Stoppage History at No. 3 Mine

16. There were five other strikes, each of 24 hours' duration (three production shifts) at No. 3 mine from August 1974 to March 1975, which the defendants admit were over issues subject to the arbitration provisions of the NBCWA in effect at the time.

On March 27, 1975, employees at No. 3 mine represented by the defendant unions commenced a work stoppage over discipline administered to miner James Hammond, who had been late to work. Prior to the strike, that miner had filed a grievance which was being handled through the contractual provisions at the time of the walkout. On March 1, 1975, a work stoppage occurred in protest over an employee's not being permitted to work when he was late; a grievance was filed with respect to this employee's complaint on the day of the work stoppage. On February 10, 1975, a work stoppage occurred because an employee was disciplined after being absent two days without prior notice or consent; in this case U. S. Pipe met with the unions during the strike and negotiated a settlement of the complaint. The miner returned to work and no grievance was filed. Two other work stoppages occurred on September 13, 1974, and August 15, 1974, both arising from the posting of certain "training opportunity" jobs. A dispute arose as to U. S. Pipe's right to require an aptitude test as a precondition for certain "training opportunity" jobs. In the case of the September 13, 1974, walkout, a grievance was pending at the time it occurred.

17. Shortly after the NBCWA of 1974 became effective there occurred a work stoppage at all three U. S. Pipe mines, commencing on December 16, 1974, and continuing through December 19, 1974, resulting from the maintenance of pickets by a "stranger" UMWA construction local. U. S. Pipe instituted a civil action in the United States District Court and obtained on December 17, 1974, a temporary restraining order enjoining the work stoppage at No. 3 mine, and the two other mines, from the Honorable James H. Hancock, United States District Judge. The records of that proceeding show that Judge Hancock found that under the broad definition of grievance in the NBCWA of 1971 (adopted by reference during the first 60 days of the NBCWA of 1974) the right of UMWA members to honor such pickets was a local dispute subject to processing through the contractual grievance and arbitration procedure. Accordingly, this court finds that the three-day work stoppage of December 1974 was a strike in breach of contract.

18. The court finds, on the basis of admissions filed in this case and other proceedings in this court of which judicial notice is taken, that in the period from August 1974 to April 1975 there were five other strikes in breach of contract involving two UMWA local unions at other U. S. Pipe mines. This finding is believed to be material to the failure of the UMWA to deal effectively with strikes in breach of contract involving UMWA local unions at all U. S. Pipe mines.

### Utilization of the Dispute Settlement Procedure

19. With the exception of the December 1974 strike involving the construction pickets, none of the strikes at No. 3 mine involved novel questions or issues presenting any unusual question of coverage under the grievance and arbitration procedures. Five of the seven work stoppages at No. 3 mine involved matters over which grievances were brought either at the time of the work stoppage or immediately thereafter. The court concludes that the strikes resulted from a disregard of the established contract procedures, and the court views the issues which resulted in the walkouts to be relatively minor issues. Two of the five grievances over which strikes occurred were simply dropped by the defendants short of settlement or arbitration.

20. This series of strikes, over matters covered by the grievance and arbitration provisions of the NBCWA's of 1971 and 1974, establishes a pattern of disregard, creating a reasonable apprehension that such strikes will be resumed and will continue absent effective injunctive relief.

21. Between December 1974 and April 16, 1975, only seven grievances

reached step two of the contractual grievance procedures, at which point they were reduced to writing. In the same period five wildcat strikes occurred. The court finds that the contractual grievance procedure has not been utilized by the defendants as a viable method for the resolution of grievances since the NBCWA of 1974 became effective; the defendants have resorted to self help almost as many times as they have taken grievances beyond step one of the contractual dispute settlement procedure.

22. The court finds that the plaintiff has complied with the provisions of Article XXIII of the NBCWA of 1974 and corresponding provisions of the NBCWA of 1971, and finds that the plaintiff has not failed to process grievances presented to it.

### Irreparable Injury

23. Each of the strikes in breach of contract has caused substantial injury to the plaintiff. While precise calculation of damages is difficult, the fixed costs, in excess of $14,000 per day, are significant, and the court also notes that profits are lost. The court finds that the strikes have caused the plaintiff substantial and irreparable damages for which the legal remedy is inadequate, especially since there is no way to replace the lost production of much-needed coal. During the current energy crisis, production from this mine, contracted for in order to produce electrical energy, is important to the public as well as to the plaintiff.

24. The defendant unions have offered no evidence as to any damage they may incur as the result of the issuance of a preliminary injunction, and the court finds that the plaintiff would suffer more from the denial of an injunction than the defendant unions would from its issuance.

### Union Involvement

25. Under provisions of the UMWA constitution, members have a duty to participate only in strikes authorized by the International Union and have a duty to support the enforcement of the union's collective bargaining agreement. In the case of the unauthorized strikes under consideration, the unions had a duty to attempt to get the miners back to work.

26. The court finds that substantially all local union members participated in each wildcat strike and that no production work was performed during the work stoppages, and that the president of the local union failed to report for work during any of the wildcat strikes occurring during his tenure as an officer of the local union, which began in January 1975. The court finds that the chairman of the mine committee also failed to work during any of the work stoppages.

### CONCLUSIONS OF LAW

1. The parties stipulated that U. S. Pipe is an employer engaged in industry affecting interstate commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

2. Both defendants are labor organizations engaged in representing employees in an industry affecting commerce within the meaning of the Labor Management Relations Act.

3. This court has jurisdiction of this action under the Labor Management Relations Act, and the separate motions of each defendant to dismiss based on lack of jurisdiction are hereby overruled.

4. The grievance and arbitration provisions of the NBCWA's of 1971 and 1974 give rise to an implied no-strike obligation as a matter of law. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed. 593 (1962); *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

5. The work stoppages at No. 3 mine occurring in August, September

and December 1974, and February, March and April 1975, were in violation of the collective bargaining agreements in effect and the implied no-strike obligation therein.

6. This court has previously held that the decision in *The Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), is broad enough to permit a prospective injunction prohibiting strikes over arbitrable issues when the tests set out in that case have been met. *See United States Steel Corp. v. United Mine Workers of America,* 383 F.Supp. 1082 (N.D.Ala.1974), appeal pending, Fifth Cir. Case No. 74–2610. This case meets those tests of *Boys Markets* which this court applied in *U. S. Steel.* First, the strikes at No. 3 mine have been over issues which both parties are bound to arbitrate to a final and binding decision. Second, the ordinary principles of equity plainly favor the plaintiff. Seven strikes in breach of contract during eight working months is sufficient as a basis for a rational judgment that such breaches are going to continue to occur absent effective injunctive relief. Third, the plaintiff is clearly subject to irreparable injury, while the defendants have shown no prospective injury. Indeed, an injunction would merely require the defendants to honor their contractual commitments.

■ 7. Local 1928 argues that the plaintiff's refusal to meet with the local union officials to attempt settlement of the underlying dispute on April 17, 1975, taints the plaintiff's equitable posture, apparently feeling that the refusal amounted to a failure to process an arbitrable grievance. However, this court finds that the plaintiff has not failed or refused to process any grievance. The court rejects any requirement that an employer, in a *Boys Markets* situation, negotiate during a wildcat strike over the dispute triggering the strike. Such a requirement is not dictated by *Boys Markets* and this court believes such a requirement would be inconsistent with

that decision, since it would undermine the contractual dispute settlement procedures by providing an incentive to strike and apply economic pressure in support of the union's grievance position.

8. Subsequent to this court's decision in *United States Steel, supra,* two United States Circuit Courts of Appeals have sustained trial court injunctions directed to future work stoppages after the showing of a history of work stoppages in breach of contract. *See C. F. & I. Steel Corp. v. United Mine Workers of America,* 507 F.2d 170 (10th Cir. 1974), and *Old Ben Coal Corp. v. Local Union Number 1487 of United Mine Workers of America,* 500 F.2d 950 (7th Cir. 1974). Both courts determined that *Boys Markets* permits a prospective injunction which will aid the arbitration process, despite the provisions of the Norris-LaGuardia Act. *See also Central Appalachian Coal Corp. v. UMWA,* 376 F.Supp. 914 (S.D.W.Va.1974); *AAA Plumbing and Pottery Corp. v. Gadsden Local 150, United Glass and Ceramic Workers of North America, AFL–CIO, CLC,* unpublished order, Civil Action 74–M–800 (N.D.Ala.1975).

■ 9. The defendants argue that *Boys Markets* does not permit prospective relief, and that the *Boys Markets* exception to the Norris-LaGuardia Act is limited to the dispute which caused the most recent walkout in breach of contract. The court reads *Boys Markets* more broadly. There would be little justification for requiring an employer to come into court on each subsequent work stoppage seeking temporary restraining orders after having shown a history of work stoppages such as that shown here. Such a requirement would unduly inhibit the national policy of favoring amicable resolution of labor disputes in the arbitration forum. The injunctive relief being granted in this proceeding is designed to encourage resolution of disputes by arbitration, and is not intended to be used as a weapon in labor disputes. The Norris-LaGuardia Act was designed to prohibit federal courts from interven-

ing in labor disputes by use of the injunction; but in this case, the injunction, instead of interposing the court between the parties, merely assures that the parties will resort to the procedure they themselves have chosen for the resolution of disputes. To protect the arbitration process, a preliminary injunction is necessary to prohibit strikes over issues heretofore resulting in unlawful work stoppages and to prohibit strikes in circumstances where the defendants have committed a grievance to the arbitration procedure, pending trial of this cause.

10. Local 1928 is responsible for the various work stoppages because of the active participation of its officers and committeemen. Both defendant unions are responsible on the principle that "as long as a union is functioning as a union it must be held responsible for the mass action of its members." *Vulcan Materials Co. v. United Steelworkers of America, AFL-CIO*, 430 F.2d 446, at 455 (5th Cir. 1970), cert. denied, 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971). The defendants assert that this principle from *Vulcan Materials* is not applicable here because *Vulcan Materials* involved an action for damages under Section 303 of the Labor Management Relations Act of 1947 and not an action for an injunction under Section 301. This court fails to understand why that fact would make the principle inapplicable.

11. This court considers appropriate a preliminary injunction enjoining the defendant from instigating, encouraging, engaging in, or permitting strikes (1) in whole or in part over any issue which is the subject of a pending written grievance filed by the defendants or any of their member employees at No. 3 mine pursuant to the procedures set out in Article XXIII of the NBCWA of 1974, or (2) in whole or in part over disputes at No. 3 mine, which are not the subject of pending written grievances, involving any of the following matters: employee discipline of whatever nature; refusals by U. S. Pipe to permit an employee who is late for work to work his scheduled shift; disputes relating to U. S. Pipe's posting of "training opportunity" jobs under the NBCWA of 1974; disputes in any manner relating to, or arising from, U. S. Pipe's right to require that employees bidding on "training opportunity" jobs take aptitude tests; or disputes relating in any way to the U. S. Pipe employees' right to honor a picket line of another union at No. 3 mine. Plaintiff will be required, as a condition for such relief, to hold itself ready, as it has offered to do in the instant dispute, to submit all disagreements, disputes and grievances to the grievance procedures prescribed by the NBCWA of 1974.

The injunctive relief granted in this case is somewhat narrower than the injunction granted in the *United States Steel* case, *supra,* but this decision is not to be taken as a retreat from the court's decision in that case. The court does note that the collective bargaining agreement between the parties in this action has approximately two and one-half years to run before expiration, and the court is reluctant, in view of that fact, to grant the plaintiff here as broad a relief as it granted the plaintiff in *United States Steel*, where the contract then in effect had only six months to run.

However, the court retains jurisdiction of this case pending trial, and the plaintiff, in the event of further strikes over arbitrable issues not subject to the limited injunctive relief granted, may make application to the court for further relief.