05-5988-cv
Chartschlaa v. Nationwide Mutual

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2006

(Argued: October 23, 2006                    Decided: August 14, 2008)

Docket Nos. 05-5988-cv(L), 05-6603-cv(xap)

---------------------------------------------------------------X

PETER CHARTSCHLAA and ANGELA SAWICKI KING as personal
representatives of ALEX CHARTS, deceased, doing business as Alex
Charts Agency Inc. and Charts Insurance Associates, Inc.,[1]

                    Plaintiffs-Appellees-Cross-Appellants,

          - v. -

NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, NATIONWIDE LIFE INSURANCE CO., NATIONWIDE
PROPERTY AND CASUALTY COMPANY, NATIONWIDE VARIABLE LIFE INSURANCE
COMPANY and COLONIAL INSURANCE COMPANY OF CALIFORNIA,

                    Defendants-Appellants-Cross-Appellees,

HELENA CHARTS and CHRISTOPHER L. GARCIA,

                    Plaintiffs.

---------------------------------------------------------------X

---

[1] Alex Charts died during the pendency of these proceedings, and by order of this Court filed June 26, 2008, Peter Chartschlaa and Angela Sawicki King were substituted as parties pursuant to Federal Rule of Appellate Procedure 43(a)(1).

Before: WINTER, McLAUGHLIN, and STRAUB, Circuit Judges.

Appeal from a judgment entered by the United States District Court for the District of Connecticut (Droney, J.) upon a jury verdict in favor of plaintiffs. REVERSED.

> RAYMOND A. GARCIA (Jane I. Milas, Nicole Liguori Micklich, on the brief), Garcia & Milas, P.C., New Haven, Connecticut, for Plaintiffs-Appellees-Cross-Appellants.
>
> CHRISTOPHER LANDAU, Kirkland & Ellis LLP, Washington, D.C. (Michael Shumsky, Kirkland & Ellis LLP, Washington, D.C., Deborah S. Freeman, Ann M. Siczewicz, Bingham McCutchen LLP, Hartford, Connecticut, on the brief), for Defendants-Appellants-Cross-Appellees.

--------------------------------------------------------------X

Per Curiam:

Defendants-Appellants-Cross-Appellees Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide Property and Casualty Company, Nationwide Variable Life Insurance Company, and Colonial Insurance Company of California (collectively, "Nationwide"), appeal from a judgment entered by the United States District Court for the District of Connecticut (Droney, J.) upon a jury verdict in favor of Plaintiffs-Appellees-Cross-Appellants Alex Charts and Charts Insurance Associates, Inc. ("CIAI"). Charts and CIAI cross-appeal the district court's denial of their motion for prejudgment interest and grant of Nationwide's motion for judgment

2

as a matter of law on one of their claims.

Charts and CIAI, former sellers of Nationwide insurance policies, sued on several claims arising out of Nationwide's termination of their relationship. For the reasons that follow, we hold that those claims belong to the bankruptcy estate of Alex Charts and not to either of the plaintiffs. Accordingly, we reverse the judgment of the district court and direct that judgment be entered in favor of Nationwide.

## BACKGROUND

We assume familiarity with the district court's and our prior decisions in this case. See Charts v. Nationwide Mut. Ins. Co., 16 F. App'x. 44 (2d Cir. 2001) ("Charts I";) Charts v. Nationwide Mut. Ins. Co., 300 B.R. 552 (D. Conn. 2003) ("Charts II"); Charts v. Nationwide Mut. Ins. Co., 397 F. Supp. 2d 357 (D. Conn. 2005) ("Charts III"). We recount here only those facts necessary for resolution of this appeal.

Since at least 1979, Alex Charts has been in the business of selling Nationwide insurance. He started as an individual agent with an individual agent's agreement. In 1986, Charts entered into a new agency agreement (the "Corporate Agency Agreement") with Nationwide through a corporation called Alex Charts Agency, Inc. (the "Old Agency"), of which Charts was the sole shareholder. In October 1992, Charts formed CIAI as a new corporate entity for his insurance business. That month, the officers and directors of CIAI, including Charts, held an organizational meeting. Charts

3

prepared the incorporation papers for CIAI, but delayed filing them.

In December 1992, Charts and his wife filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut. As required in a Chapter 7 bankruptcy proceeding, Charts filed various schedules of assets and liabilities. See 11 U.S.C. § 521. Charts listed the Old Agency as the name of his insurance business. He did not list his interest in CIAI as an asset of his estate.

In January 1993, Charts formally filed the certificate of organization for CIAI with the Connecticut Secretary of State.

In May 1993, while still in bankruptcy proceedings, Charts executed a new agency agreement with Nationwide on behalf of CIAI (the "CIAI Agreement"). The CIAI Agreement, which had an effective date retroactive to January 1, 1980, allowed CIAI to market and service Nationwide insurance contracts as Charts had done in the past individually and through the Old Agency.

In 1995, Nationwide launched an internal investigation into potential misconduct by its Connecticut agents. During that investigation, several agents alleged that Charts engaged in prohibited business practices.

In January 1996, Nationwide terminated the CIAI Agreement.

In February 1996, Charts obtained an order of discharge in his bankruptcy proceedings, and the bankruptcy court closed the case.

In August 1997, Charts and CIAI sued Nationwide in the United States District Court for the District of Connecticut (Droney, J.). The plaintiffs alleged that Nationwide terminated the CIAI Agreement because of Charts's age and in retaliation for Charts's own reporting of misconduct by Nationwide employees to Nationwide management. The plaintiffs contended that these actions violated the covenant of good faith and fair dealing implied in the CIAI Agreement as well as Connecticut statutory law. Nationwide moved for summary judgment on the ground that the CIAI Agreement and any cause of action based on that contract were part of the bankruptcy estate.

In August 2000, a Magistrate Judge (Garfinkel, M.J.) recommended that the district court grant Nationwide's motion, finding that Charts's claims belonged to the bankruptcy estate and that his failure to disclose the existence of CIAI in the bankruptcy case was "clearly not inadvertent." In September 2000, the district court adopted this recommendation. Charts appealed that judgment to this Court, and we vacated the judgment, without reaching the merits, on the ground that the estate should have been joined as a party to the suit. Charts I, 16 F. App'x at 44.

On remand, the district court reopened the bankruptcy case for the purpose of appointing a trustee to represent the estate's interests in this litigation. Nationwide thereafter renewed its motion for summary judgment, iterating its position that the claims belonged to the bankruptcy estate. The trustee then entered an

5

appearance and expressed his intent to abandon the claims against Nationwide under 11 U.S.C. § 554(a) by filing a notice of proposed abandonment. Nationwide objected to the proposed abandonment.

At a December 2002 hearing, the trustee informed the district court that he had entered negotiations to sell the claims to Nationwide, and soon planned to file a proposed notice of sale of the claims. On that basis, the trustee requested that the court take no action with respect to the proposed abandonment.

In September 2003, the district court denied Nationwide's renewed motion for summary judgment, reversing its earlier position. This time, the district court held that Charts owned the disputed claims after all, because the claims arose after the bankruptcy filing and such "post-petition" claims generally do not belong to the estate. Charts II, 300 B.R. at 556-58. In its ruling, the district court noted its understanding that the trustee had sold, rather than abandoned, whatever interest it held in the claims. Id. at 556 n.5. Thus, the court observed, "if the Court were to hold that these claims were property of the estate, . . . Charts would not have standing to assert them because any claim owned by the estate is now held by Nationwide." Id. In fact, however, the proposed sale of the claims to Nationwide was never finalized.

The case proceeded to a jury trial. At trial, Charts testified that CIAI was simply the new name and corporate identity of the very same insurance business he had previously operated

6

through the Old Agency:

Q: So that business from Alex Charts Agency, Inc., the Nationwide policies for which that company was receiving commissions, that was all rolled over to the new company?

A: Everything stayed the same. . . .

. . .

Q: When you say everything stayed the same, am I characterizing this fairly by essentially saying—and tell me if I'm wrong—that all of the business that you had been doing as Alex Charts Agency, Inc. for which you were receiving ongoing commissions, that . . . was simply moved over to the new company, Charts Insurance Associates, Inc.?

A: Yes.

Q. Did you have employees of Alex Charts Agency, Inc.?

A. Yes.

Q. Did all of those individuals who were employees of Alex Charts Agency, Inc. at the time you wound down that business, that corporation, become employees of Charts Insurance Associates, Inc.?

A. Yes.

The jury returned a verdict for Charts on all counts, awarding $2.3 million in damages.

Nationwide filed a post-verdict motion for judgment as a matter of law. The plaintiffs moved for prejudgment interest and for attorneys' fees. The district court denied Nationwide's motion except as to the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing; denied the

7

plaintiffs' motion for prejudgment interest; and awarded the plaintiffs $750,000 in attorneys' fees. Charts III, 397 F. Supp. 2d at 370, 372, 374, 385-86.

On appeal, Nationwide continues to press its argument that the claims belong to Charts's bankruptcy estate, and not to the plaintiffs. We agree. Because ownership of the claims is a threshold issue, we need not reach the numerous other arguments raised in the appeal and cross-appeal.

**DISCUSSION**

This Court reviews de novo a district court's resolution of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), applying the same standard that the district court was required to apply. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). Thus, we "consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." Id. Whether a cause of action belongs to a bankruptcy estate is a question of law, which we review de novo. See In re Swift, 129 F.3d 792, 795 (5th Cir. 1997).

Our analysis begins with 11 U.S.C. § 541(a)(1), which defines the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." "It would be hard to imagine language that would be more encompassing" than this broad definition. 4

8

_Collier on Bankruptcy_ ¶ 541.01 (15th ed. 2001). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." _In re Yonikus_, 996 F.2d 866, 869 (7th Cir. 1993). Contractual rights clearly fall within the reach of this section, _see, e.g._, _Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)_, 138 B.R. 687, 701 (Bankr. S.D.N.Y. 1992), as do causes of action owned by the debtor or arising from property of the estate, _see_ _Seward v. Devine_, 888 F.2d 957, 963 (2d Cir. 1989)

Given the wide scope of § 541, the debtor's obligation to disclose _all_ his interests at the commencement of a case is equally broad. _See_ 11 U.S.C. § 521(a)(1)(B)(i), (iii) (requiring debtor to "file . . . a schedule of assets and liabilities ... and a statement of the debtor's financial affairs"). Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets: While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed. _See_ 11 U.S.C. § 554(c), (d); _Collier_, _supra_, ¶ 554.03. "A debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [his] own benefit." _Kunica v. St. Jean Fin., Inc._, 233 B.R.

9

46, 53 (S.D.N.Y. 1999).

Because assets within the estate are those that exist "as of the commencement of the case," 11 U.S.C. § 541(a), property acquired by the debtor <u>after</u> the filing of a bankruptcy petition generally does not become part of the estate. Benjamin Weintraub & Alan N. Resnick, <u>Bankruptcy Law Manual</u> § 5:6 (5th ed. 2008). However, "[a]fter-acquired" property will vest in the estate if it is derived from property that was part of the estate as of the commencement of the bankruptcy. <u>See</u> 11 U.S.C. § 541(a)(6) (making "[p]roceeds, product[s], offspring, rents or profits of or from property of estate" part of bankruptcy estate). Post-petition property will become property of the estate only if it is "sufficiently rooted in the pre-bankruptcy past." <u>Segal v. Rochelle</u>, 382 U.S. 375, 380 (1966)) (interpreting Bankruptcy Act of 1898).

The plaintiffs argue that Charts had no duty to disclose the existence of CIAI because it was not formally incorporated until after the date of the bankruptcy petition, and therefore is not part of the bankruptcy estate. We disagree. Charts readily admitted in deposition testimony that CIAI was formed in October 1992, prior to filing his bankruptcy petition. Charts also conceded that CIAI was incorporated simply to change the name of his preexisting insurance business, and that this change occurred in October 1992, when CIAI was organized. The Bankruptcy Code is premised on full and complete disclosure of the debtor's

10

finances.  A debtor who "elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition . . . can no longer expect to have any financial secrets." In re Trout, 108 B.R. 235, 238 (Bankr. D.N.D. 1989).  The existence of CIAI—the formal incorporation of which Charts delayed until soon after filing for bankruptcy and which was intended as simply a renamed successor to Charts's Old Agency—should have been disclosed to the bankruptcy trustee.[2]  And because CIAI's existence was not disclosed, it remains part of the bankruptcy estate.  See Kunica, 233 B.R. at 53.

Further, the CIAI Agreement is also an asset of the bankruptcy estate, even though it was not signed until May 1993. During his deposition, Charts conceded that Nationwide issued a new contract to CIAI at his request because of the change of his business's name.  Even more telling, the CIAI Agreement had a retroactive effective date of January 1, 1980—the approximate date that Charts began doing business with Nationwide.  The parties thus perceived the CIAI Agreement as merely a

---

[2] When he filed for bankruptcy, Charts listed the Old Agency as an exemption under 11 U.S.C. § 522(d)(5), valuing the business at a mere $1.  That provision allows debtors to exempt from the bankruptcy estate up to $11,200 in estate property.  11 U.S.C. § 522(d)(5).  The plaintiffs have not argued that CIAI was subject to this exemption or that the CIAI Agreement is not a product of the bankruptcy estate by virtue of the exemption.  In a dispute that has entered its second decade, we will not take up this argument for them.  See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (issues not sufficiently argued considered waived).

continuation of their longstanding business relationship. See Weintraub & Resnick, supra, § 5:6 n.1 ("It is important to distinguish between property that is acquired after the case is commenced and property that merely changes in form."). Accordingly, the CIAI Agreement is deeply rooted in the pre-bankruptcy past, and should be considered part of the bankruptcy estate.

Because the claims asserted by the plaintiffs arose from CIAI and the CIAI Agreement, they are also property of the bankruptcy estate, and those claims may not be brought by the plaintiffs.

Finally, we reject the plaintiffs' argument that the rights in Charts's insurance business were abandoned to Charts after the trustee filed and served on creditors a notice of proposed abandonment of the claims. Abandonment is not a process to be taken lightly. Once an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances. See Catalano v. Comm'r, 279 F.3d 682, 686 (9th Cir. 2002). In light of the impact of abandonment on the rights of creditors, a trustee's intent to abandon an asset must be clear and unequivocal. See In re Sire Plan, Inc., 100 B.R. 690, 693 (Bankr. S.D.N.Y. 1989).

Here, the trustee informed the district court that it intended to sell the claims to Nationwide. This representation

12

was inconsistent with the trustee's previously evinced intent to abandon the property to Charts. Indeed, the trustee specifically requested that the court take no action on the abandonment issue while the negotiations were pending. Although the sale was never consummated, there is no indication that the trustee ever renewed its request to abandon the claims. Under these circumstances, the trustee's intent to abandon the claims was ambiguous. Absent an unambiguous intent to abandon estate property, the proposed abandonment is not effective.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED. We direct the district court to enter judgment for Nationwide.