6 F.3d 108
 86 Ed. Law Rep. 47
 1ST WESTCO CORPORATION; Richard J. Lee; Troy Lyles; Carl
Haines; Charles J. Fuller; Stanley Yakupchina;
Todd Curtis; Roosevelt Whitehead
v.
The SCHOOL DISTRICT OF PHILADELPHIA, Third Party Plaintiff;
Commonwealth of Pennsylvania
v.
Ernest D. PREATE, Jr., individually and in his official
capacity as Attorney General of the Commonwealth of
Pennsylvania; Donald M. Carroll, Jr., individually and in
his official capacity as Secretary of Education of the
Commonwealth of Pennsylvania, Third Party Defendants,
Ernest D. Preate, Jr., and Donald M. Carroll, Jr., Appellants.
 No. 93-1127.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 11, 1993.
Decided Sept. 17, 1993.
Sur Petition for Rehearing Oct. 27, 1993.
 
 Ernest D. Preate, Jr., Atty. Gen., Susan J. Forney, Senior Deputy Atty. Gen. (argued), Calvin R. Koons, Senior Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Harrisburg, PA, for appellants.
 Roy S. Cohen (argued), Alisa G. Field, William B. Jameson, Cohen & Huntington, P.C., Philadelphia, PA, for appellees.
 Sally Akan, General Counsel, Jackie B. Sparkman, Asst. Gen. Counsel (argued), School District of Philadelphia, Office of Gen. Counsel, Philadelphia, PA, for the School Dist.
 Before: SCIRICA, COWEN, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal has its genesis in an old Pennsylvania statute enacted during the Great Depression of the 1930's to preserve jobs for unemployed Pennsylvanians on public projects. In 1935, the Pennsylvania legislature adopted a provision requiring school districts to include employee residency requirements in contracts in which they entered for construction, alteration, or repair of school buildings. The parties to this appeal ask this court to determine whether the Pennsylvania Attorney General and Secretary of Education are proper defendants to a suit challenging the constitutionality of the successor to this Pennsylvania state statute. The parties also request that we determine whether the Pennsylvania statute is constitutional.
 
 
 2
 1st Westco Corporation is a construction company having its principal place of business in New Jersey. It and seven of its New Jersey resident employees, in their individual capacities (collectively Westco), brought suit in the United States District Court for the Eastern District of Pennsylvania against the School District of Philadelphia (the School District) and the Commonwealth of Pennsylvania (the Commonwealth). Westco alleged that section 7-754 of the Pennsylvania Public School Code (the Code), 24 Pa.Stat.Ann. Sec. 7-754 (Purdon's 1992) (section 754),[1] which mandates that only Pennsylvania residents may work on public school construction projects, violates the Privileges and Immunities Clause (the P & I Clause) of the United States Constitution, Article IV, Section 2, Clause 1, and the Commerce Clause of the United States Constitution (Commerce Clause), Article I, Section 8, Clause 3.
 
 
 3
 The School District decided that Westco was in violation of Sec. 754, and thus could no longer continue to work for the School District. At the request of Westco, the district court entered a temporary restraining order (TRO) prohibiting the School District and the Commonwealth from enforcing the statute pending a preliminary injunction hearing. Following the hearing, the court lifted the TRO and denied the preliminary injunction.
 
 
 4
 Just prior to the hearing, the Commonwealth moved to dismiss the claims against it based on the Eleventh Amendment to the United States Constitution. During the pendency of the motion, the School District filed a third-party complaint against Donald M. Carroll, Jr., Pennsylvania's Secretary of Education (Secretary), and Ernest D. Preate, Jr., Pennsylvania's Attorney General (collectively, Commonwealth Officials).
 
 
 5
 The Commonwealth Officials moved to dismiss the third-party complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, arguing that neither of the Commonwealth Officials was authorized to enforce, or had threatened to enforce, section 754.
 
 
 6
 The district court granted the Commonwealth's motion to dismiss based on the Eleventh Amendment, but denied the Commonwealth Officials' motion to dismiss the third-party complaint. The court reasoned that the Attorney General had advised the Secretary that section 754 was constitutional, and the Secretary relayed that opinion to the School District. The court held that those acts, coupled with the Commonwealth Officials' general responsibilities for overseeing compliance with the laws of Pennsylvania, provided a sufficient predicate for liability.
 
 
 7
 Following discovery, each side filed motions for summary judgment, supported by expert reports and other data and documents. The district court entered summary judgment in favor of Westco and against the School District and the Commonwealth Officials, holding that section 754 violates the P & I Clause, 811 F.Supp. 204.[2]
 
 
 8
 The Commonwealth Officials filed a timely notice of appeal, both for the district court's denial of their motion to dismiss and the court's grant of summary judgment in favor of Westco.
 
 
 9
 In the case sub judice Westco attempts to merge the identity of the Commonwealth of Pennsylvania with those of the Attorney General and the Secretary by joining them in a lawsuit to which their connection is highly attenuated. We do not agree that the Commonwealth Officials can properly be conscripted as proxies for the state to attach liability to them. Accordingly, we reverse.
 
 I. FACTS
 
 10
 Section 754 provides that all construction, alteration, or repair of public school buildings must be done by Pennsylvania residents. If a contractor allows citizens of a foreign state to work on such a project, section 754 authorizes the school district in charge of the construction to refuse payment for the labor.
 
 
 11
 The Secretary is empowered to review and approve specifications for the construction and reconstruction of school buildings, and he may refuse to approve specifications for work that does not comply with the residency requirements. However, this authority to review and approve specifications is limited to second, third, and fourth class school districts. 24 Pa.Stat.Ann. Sec. 7-731 (Purdon's 1992). Philadelphia is a first class school district, and thus the Secretary's power of review does not extend to it. Id. at Sec. 2-202.
 
 
 12
 The Attorney General has the duty, upon request, to provide legal advice to the head of any Commonwealth agency, and although the Department of Education qualifies, a school district is not considered such an agency. 71 Pa.Stat.Ann. Secs. 732-204(a), 732-102 (Purdon's 1990). In providing this advice, the Attorney General must "uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction." Id. at Sec. 732-204(a)(3). The advice of the Attorney General, once sought, shall be followed by the requesting agency. Id. at Sec. 732-204(a)(1).
 
 
 13
 In 1988, the School District requested that the Secretary render an opinion about the constitutionality of section 754. The Secretary, in turn, made the same request of the Attorney General. On June 15, 1988, then Attorney General Leroy S. Zimmerman issued an opinion letter to the Secretary stating that, because section 754 has not been invalidated by a court, "[he is] compelled to respect the presumptive constitutionality of Section 754 ... and you are advised accordingly that the Department of Education has the duty to enforce it." The Department of Education relayed this message to the School District. Although the Attorney General's opinion was binding on the Secretary, it had no such effect on the School District.
 
 
 14
 In January of 1991, nearly three years after the School District requested the opinion from the Secretary, the School District awarded Westco three contracts for window construction and renovation at three of the district's school buildings. However, the School District soon directed Westco to stop working on all three projects because it had failed to comply with section 754's residency requirement by assigning seven New Jersey residents to work on the School District projects. Westco replaced the New Jersey residents with Pennsylvanians, and continued to fulfill its contract with the School District. The lawsuit underlying this appeal followed.
 
 II. DISCUSSION
 
 15
 The standard of review for the district court's application of the legal precepts involved in this case is plenary, but the trial court's factual determinations are reviewed subject to the clearly erroneous standard. Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir.1990).
 
 
 16
 Under Article III of the Constitution, a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 
 
 17
 A plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiffs. Rode v. Dellarciprete, 845 F.2d 1195, 1209 n. 9 (3d Cir.1988) (Rosenn, J.). General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law. Id. at 1208.
 
 
 18
 In this case, the statute charges the School District, not the Commonwealth Officials, with enforcing section 754. The statute provides that a contractor's failure to comply with the residency requirement shall be sufficient reason "to refuse payment of the contract price to the contractor." 24 Pa.Stat.Ann. Sec. 7-754. It is the School District who ultimately pays, or refuses to pay, the contractor. Thus, it is the School District, not the Commonwealth Officials, that has the authority and the right to enforce section 754.
 
 
 19
 Also, it is undisputed that the School District actually enforced section 754 against Westco. The School District, not the Commonwealth Officials, directed Westco to cease work until it complied with the residency requirements. The district court acknowledged in its opinion: "In reliance upon the Department of Education letter, the School District enforced the statute by ordering 1st Westco to stop work." (emphasis added).
 
 
 20
 Hence, neither of the Commonwealth officials possesses a statutory duty to enforce section 754. The Secretary is empowered to review and approve specifications for the construction and reconstruction of school buildings, and he may refuse to approve specifications for work that does not comply with the residency requirements. However, the state legislature, for reasons best known to them, limited this authority to review and approve specifications to second, third, and fourth class school districts and excluded Pennsylvania's first class school district. 24 Pa.Stat.Ann. Sec. 7-731. Philadelphia is Pennsylvania's only first class school district. Id. at Sec. 2-202. Thus, the Secretary has no statutory power to enforce section 754 against the School District.
 
 
 21
 Likewise, section 754 does not give the Attorney General the power or the duty to enforce it. The Attorney General is bound to issue opinions only to the heads of state agencies, and the School District does not so qualify. Therefore, not only does the Attorney General lack the duty to enforce section 754, but he also does not have the power to issue a binding opinion concerning the statute to the School District.
 
 
 22
 Notwithstanding, the district court reasoned that the Commonwealth Officials are proper parties to this action because (1) public education is highly regulated, (2) the Attorney General has the duty to advise the Secretary, who in turn must advise the School District, regarding the constitutionality of section 754, and (3) the Commonwealth Officials have a general duty to enforce the laws of Pennsylvania. However, none of these serves as a proper basis to hold the Commonwealth Officials liable to Westco.
 
 
 23
 First, assuming arguendo that the district court correctly found that public education is highly regulated, that finding proves little. The relevant inquiry to determine whether the Commonwealth Officials are the proper defendants to this lawsuit is whether they enforced, or threatened to enforce, section 754 against the plaintiff. Rode, 845 F.2d at 1209 n. 9. However, as discussed above, it was the School District, not the Commonwealth Officials, that has the statutory duty to enforce section 754. Furthermore, the School District, not the Commonwealth Officials, actually enforced the statute against Westco. Thus, the abstract notion that public education is highly regulated has little relevance to the present controversy.
 
 
 24
 Second, the Attorney General's duty to advise the Secretary, and the Secretary's subsequent advice to the School District, cannot serve as a predicate for liability. Although the Attorney General has a duty to advise the Secretary, he has no such duty with regard to the School District. In fact, the Attorney General's opinion regarding the constitutionality of the statute is not even binding upon the School District.
 
 
 25
 Similarly, the Secretary's act of advising the School District about the constitutionality of the statute differs significantly from a duty to enforce section 754. Although the School District was bound to accept the opinion that the statute was constitutional, it nonetheless could have chosen to refrain from hiring Westco in the first instance. Also, once Westco was hired, the School District could have refrained from taking any action against it for its violation of the residency requirement, as an official can believe a law to be constitutional without ever harboring an intent to affirmatively enforce it.
 
 
 26
 Furthermore, the Secretary relayed the Attorney General's advice to the School District without any knowledge of Westco's circumstances; rather, it issued the opinion almost three years prior to the School District's action to enforce section 754. Thus, the act of issuing an opinion about an abstract constitutional issue falls far short of enforcing, or threatening to enforce, a statute against a specific party. See Rode, 845 F.2d at 1208 ("The power to review and approve a departmental regulation for form and legality, however, does by no means charge the Governor and Attorney General with the duty to enforce that regulation.").
 
 
 27
 Finally, the Commonwealth Officials' general duty to enforce the laws of the Commonwealth of Pennsylvania do not supply a proper predicate for liability in this case. Although neither the Attorney General nor the Secretary is specifically charged with the duty of enforcing the challenged statute, as high level policy officials of the state, the Commonwealth Officials must "uphold and defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction." 71 Pa.Stat.Ann. Sec. 732-204(a)(3). Thus, the Commonwealth Officials have a general duty to uphold the laws of Pennsylvania.
 
 
 28
 The district court reasoned that Ex Parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), stands for the proposition that an official needs only some connection to the suit in order to be held accountable, even if that connection arises out of the general obligation to uphold the law. As the district court conceded, however, later cases have more clearly defined the connection that must be present in order to properly join a person as a party to a lawsuit.
 
 
 29
 In Rode, 845 F.2d at 1208 (quoting Allied Artists Pictures Corp. v. Rhodes, 473 F.Supp. 560, 568 (S.D. Ohio 1979)), this court opined that, although Ex Parte Young allows a party to be joined to a lawsuit based solely on his or her general obligation to uphold the law, it is appropriate only in cases in which there is a "real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiff's interests." The court went on to find that there was "no realistic potential that the Governor's general power to enforce the laws of the state would have been applied to a departmental regulation against a PSP administrative assistant." Rode, 845 F.2d at 1208.
 
 
 30
 Similarly, in the present case, Westco did not demonstrate that there was a realistic likelihood that the Commonwealth Officials would enforce section 754 against Westco. The Secretary did not direct the School District to prosecute Westco; the Secretary issued his opinion almost three years prior to the dispute with Westco. Moreover, the Secretary did not threaten the School District with action if it did not comply with the statute. Rather, the Secretary, upon a request from the School District, merely opined about the constitutionality of the statute.
 
 
 31
 The Attorney General's role in this lawsuit is even more attenuated. He rendered an opinion to the Secretary, and he had no communication with the School District. Although that opinion was binding on the Secretary, it was not binding on the School District. He did not threaten to enforce the statute against the School District or Westco.
 
 
 32
 In essence, although it is theoretically possible for the Commonwealth Officials to have initiated suit against Westco's interests, there is no evidence in the record to demonstrate that two of the state's highest policy officials would have filed suit to rectify a statutory residency infraction by seven construction workers in connection with a contract with a local school district. Consequently, the Commonwealth Officials' general duty to uphold the laws of Pennsylvania, standing alone, will not suffice to render them proper defendants in this lawsuit.
 
 
 33
 Westco counters that this case is distinguishable from Rode because "both the 1st Westco Plaintiffs and the School District had every reason to believe (and this litigation confirmed) that the Commonwealth intended to and, in fact, has enforced the Statute at issue against the 1st Westco Plaintiffs." However, as stated earlier, the present case and Rode are quite similar; in both cases, a high policy official with a general duty to uphold the law has been made a party to a suit where there is little likelihood that he actually would have enforced the particular statute at issue.
 
 
 34
 Furthermore, this litigation cannot possibly confirm that anyone would enforce the statute against Westco, because Westco is the plaintiff that initiated the action. Moreover, even the conduct underlying the suit confirms only that the School District intended to enforce the statute against Westco, because the suit stems from the School District's actions against Westco. The Commonwealth Officials' only involvement in this litigation is that they were impleaded, as defendants, by the School District. Thus, it is unclear how this litigation proves that the Commonwealth Officials intended to enforce the statute against Westco.
 
 
 35
 The School District alleges that it is likely that the Commonwealth Officials would have taken action against Westco to compel compliance with the residency requirement because the Secretary enforces section 754 against the smaller second, third, and fourth class school districts. Thus, reasons the School District, it follows that the Secretary would not overlook a transgression by a larger, first class school district.
 
 
 36
 However, this speculative argument overlooks significant procedural differences between the Secretary's role in approving the plans for first class school districts and his role in approving plans for second through fourth class school districts. The Secretary is statutorily charged with approving construction plans for second, third, and fourth class school districts. The plans are given to him, and he is statutorily obligated to peruse them in search of deficiencies. He is thus legally bound to disapprove a plan that flouts the residency requirement of section 754.
 
 
 37
 However, this falls far short of demonstrating that the Secretary would undertake the effort and expense to file a lawsuit to enforce section 754. The plans for first class school districts are not given to him, and he would therefore have to make inquiries and spend time obtaining such plans in an effort to monitor them. He also would have to use the courts to enforce the statute because he does not possess approval power for first class school districts. Finally, as discussed at length, he is not statutorily obligated to enforce the statute against first class school districts and there is a serious question as to whether he even has a right to do so. Thus, that the Secretary enforces section 754 against second, third, and fourth class school districts in no way demonstrates that he had the authority or the desire to do so against the School District in this case.
 
 
 38
 Also, the School District could easily have confirmed any suspicion that it may have had that the Commonwealth Officials would have enforced section 754 by declining to enforce the statute against Westco. If the Commonwealth Officials then compelled it to enforce section 754, then the School District could properly have joined them to this lawsuit.
 
 
 39
 The district court asserts that in Rode we stated that personal knowledge of an allegedly unconstitutional action is sufficient to predicate liability. Rode, 845 F.2d at 1207.[3] Thus, it reasoned, the Commonwealth Officials' personal knowledge of the unconstitutional statute similarly suffices to predicate liability on the Commonwealth Officials.
 
 
 40
 However, in Rode, the court found that the plaintiff had failed to show that the Governor had personal knowledge of the constitutional violation against the plaintiff. Id. at 1208. The same is most certainly true in the present case, where the Secretary relayed the Attorney General's opinion to the School District in 1988, almost three years before Westco obtained the contract to work on the school. Thus, although the Commonwealth Officials had knowledge of the content of section 754, they could not have known of its application against Westco.
 
 
 41
 In sum, there was no case or controversy before the district court between Westco and the Commonwealth Officials. Thus, the district court lacked jurisdiction to decide this case against the Commonwealth Officials and its decision not to dismiss the action against the Commonwealth Officials must be reversed.
 
 Conclusion
 
 42
 Because there was no case or controversy between the plaintiffs and the Commonwealth Officials in this case, we reverse the district court's refusal to dismiss the third-party complaint against the Commonwealth Officials. The only parties that appeal the merits of the grant of summary judgment are the Secretary and the Attorney General. Hence, we do not address the constitutionality of section 754.
 
 
 43
 If we were to allow Westco to join the Commonwealth Officials in this lawsuit based on their general obligation to enforce the laws of the Commonwealth, we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it. Such a result is undesirable, a drain on resources of time and money, and contrary to Rode. Accordingly, the judgment of the district court will be reversed. Costs taxed against appellees.
 
 SUR PETITION FOR REHEARING
 
 44
 Oct. 27, 1993.
 
 
 45
 Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and ROSENN*, Circuit Judges.
 
 
 46
 The petition for rehearing filed by appellee, The School District of Philadelphia, in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court in banc, is denied.
 
 
 
 [1]
 Section 7-754 provides:
 The specifications upon which contracts are entered into by any school district for the construction, alteration, or repair of any public works, shall contain the provision that laborers and mechanics employed on such public works shall have been residents of the Commonwealth for at least ninety days prior to their employment. Failure to keep and comply with such provision shall be sufficient legal reason to refuse payment of the contract price to the contractor.
 
 
 [2]
 Article IV Sec. 2 of the Federal Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."
 
 
 [3]
 The statement in Rode to which the district court alludes was written in an altogether different context from the present case. In Rode, we were referring to a situation where a supervisory employee has actual knowledge of or acquiesces in a wrongdoing of a subordinate's retaliatory harassment of another employee
 
 
 *
 As to panel rehearing only