15-3706-cv
BPP Illinois v. Royal Bank of Scotland Grp. PLC

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: October 20, 2016     Decided: June 13, 2017)

Docket No. 15-3706-cv

- - - - - - - - - - - - - - - - - - -x

BPP ILLINOIS, LLC, BPP IOWA, LLC, BPP MICHIGAN, LLC, BPP MINNESOTA, LLC, BPP TEXAS, LLC, FFC PARTNERSHIP, L.P., FINE CAPITAL ASSOCIATES, L.P., BPP WISCONSIN, LLC, BUDGET PORTFOLIO PROPERTIES, LLC,

Plaintiffs-Appellants,

- v.-

THE ROYAL BANK OF SCOTLAND GROUP PLC, RBS CITIZENS, N.A., CITIZENS BANK OF PENNSYLVANIA,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - -x

Before:          JACOBS, POOLER, Circuit Judges, and CRAWFORD, District Judge.*

---

   * Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

A group of hotel-related businesses, along with their investor and guarantors, appeal the dismissal of their fraud claims against the Royal Bank of Scotland and two of its subsidiaries.  As to the hotel plaintiffs, the United States District Court for the Southern District of New York (Furman, J.) ruled that, because they had failed to list their cause of action in a schedule of assets in their now-concluded bankruptcy proceeding, they lacked standing to bring the claim and were barred by judicial estoppel.  The claims of the investor and guarantors were dismissed as untimely and barred by the law of the case.  We affirm on the grounds of judicial estoppel and timeliness.

JOHN SIEGAL (Dominic A. Gentile and Thomas D. Warren on the brief), Baker Hostetler LLP, New York, NY, for Plaintiffs-Appellants.

DAVID SAPIR LESSER (Jamie S. Dycus, Colin Reardon, and Ryan D. Tansey on the brief), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, for Defendants-Appellees.

DENNIS JACOBS, <u>Circuit Judge</u>:

A group of hotel-related businesses, along with their investor and guarantors, appeal the dismissal of their fraud claims against the Royal Bank of Scotland and two of its subsidiaries.  As to the hotel plaintiffs, the United States District Court for the Southern District of New York (Furman, J.) ruled that, because they had failed to list their cause of action in a schedule of assets in their now-concluded bankruptcy proceeding, they lacked standing to bring the claim and were barred by judicial estoppel.  The claims of the investor and guarantors were dismissed as untimely and barred by the law of the case.  We affirm on the grounds of judicial estoppel and timeliness.

# I

BPP Illinois, LLC, as one of a consortium of single-purpose entities that own and manage hotels (collectively "BPP"), together with corporate affiliates of BPP that guaranteed a loan taken out by BPP (the "FFC Plaintiffs"), and an investor of BPP (the "Equity Plaintiff"), allege that the defendants--the Royal Bank of Scotland Group PLC ("RBS") and two of its subsidiaries, RBS Citizens, N.A. ("RBS Citizens") and the Citizens Bank of Pennsylvania ("Citizens Bank")--fraudulently induced BPP to enter a loan agreement with Citizens Bank, and that the loan eventually pushed BPP into bankruptcy.  The district court initially dismissed the fraud and related claims against BPP on the ground that they were untimely under the applicable statute of limitations, and dismissed the claims against the FFC Plaintiffs and the Equity Plaintiff for failure to plead fraud with sufficient particularity.  In a previous appeal, we vacated the judgment as to BPP, and affirmed with respect to the other plaintiffs.  BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 603 F. App'x 57, 58 (2d Cir. 2015).  On remand, Judge Furman concluded that, based on BPP's failure to list its claims in its schedule of assets in a prior bankruptcy proceeding, BPP lacked standing to assert the claims against the defendants, or in the alternative, were judicially estopped from bringing the claims.  Judge Furman also denied a request from the FFC Plaintiffs and the Equity Plaintiff to amend their complaint, finding that amendment would be untimely and barred by the law of the case.  We conclude that BPP is judicially estopped from bringing suit,[1] and that request for leave to amend by the FFC Plaintiffs and Equity Plaintiff was properly denied as untimely.

We review de novo a grant of a motion to dismiss, "accept[ing] as true the factual allegations made in the complaint and draw[ing] all inferences in favor of the plaintiffs." Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

---

[1] Since judicial estoppel bars BPP's suit, we resolve this case without adjudicating the merits, and need not consider standing.  "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quotation marks omitted).  "Jurisdiction is vital only if the court proposes to issue a judgment on the merits." Id.

Many courts review application of judicial estoppel for abuse of discretion, <u>see</u> <u>Intellivision v. Microsoft Corp.</u>, 484 F. App'x 616, 618 & nn.1-2 (2d Cir. 2012), but because we would affirm the district court under de novo review, we need not consider whether a more deferential standard of review should apply.

## II

In 2008, BPP borrowed $66 million from Citizens Bank to finance the purchase of several hotel properties. The transaction was a loan-and-swap arrangement. The loan component required BPP to pay Citizens Bank interest at 1.65% above the U.S. Dollar London Interbank Offered Rate ("LIBOR").[2] The swap required Citizens Bank to pay LIBOR to BPP, and required BPP to pay interest to Citizens Bank at 3.1625%. The net effect of the loan and swap was that BPP paid Citizens Bank a fixed interest rate of approximately 4.8%.

In 2010, BPP filed for bankruptcy in the Eastern District of Texas. BPP's schedule of its assets, including legal claims, never listed claims against RBS or RBS Citizens, nor did it include claims against Citizens Bank on the basis of alleged LIBOR manipulation.

While the bankruptcy proceeding was ongoing, there were indications that RBS might be implicated in an improper manipulation of LIBOR. Media entities reported that government regulators were investigating possible manipulation of LIBOR. And on May 6, 2011, RBS disclosed that it was cooperating with investigations. By August 2011, numerous lawsuits alleging LIBOR manipulation had been filed against different banks, including RBS.

On October 4, 2011, the bankruptcy court confirmed BPP's bankruptcy plan of reorganization. And on November 15, 2012, the bankruptcy court ordered the proceeding closed. BPP had still not disclosed any claim relating to LIBOR manipulation.

---

[2] LIBOR is a commonly used interest rate benchmark. Each day, the British Bankers' Association announces the current LIBOR rate, which is calculated based on information provided by a panel of banks that includes RBS.

# III

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that is successfully advanced in another proceeding." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). Judicial estoppel will "prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." Coffaro v. Crespo, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010); see Negron v. Weiss, No.06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006) (collecting cases).

"[T]he exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts.'" Adelphia Recovery Trust v. Goldman, Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014) (construing New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001)). Generally, "judicial estoppel will apply if: [A] a party's later position is 'clearly inconsistent' with its earlier position; [B] the party's former position has been adopted in some way by the court in the earlier proceeding; and [C] the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." In re Adelphia Recovery Trust, 634 F.3d 678, 695-96 (2d Cir. 2011) (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010)). We assess each element in turn.

**A. Inconsistency**. The district court found that BPP advanced incompatible positions in separate judicial proceedings, having first failed to list a LIBOR-fraud claim against Citizens Bank in BPP's bankruptcy proceeding in the Eastern District of Texas, and having then asserted such a claim in the Southern District of New York after the bankruptcy proceeding closed. Because the bankruptcy proceeding was conducted in Texas, we look to Fifth Circuit law for the limited purpose of deciding whether BPP's failure to list a LIBOR-fraud claim in the bankruptcy proceeding is equivalent to an assertion that BPP did not have such a claim. It is. See In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999) (When a bankruptcy debtor "omit[s] . . . claims from its schedules and stipulation[s], [the debtor] represent[s] that none exist[].").

In the Fifth Circuit, the duty of a bankruptcy debtor to list a potential cause of action in its schedule of assets appears to depend in part on *when* the debtor

gains sufficient notice of the potential cause of action.  Cf. Byrd v. Wyeth, Inc., 907 F. Supp. 2d 803, 804-06 (S.D. Miss. 2012).  It may matter whether the debtor obtained sufficient notice of its cause of action before confirmation of the bankruptcy plan, or afterward.  Id.  BPP primarily argues that the district court erred in finding a duty to update based on information available *after* plan confirmation.  We need not consider that question because we conclude that BPP was required by Fifth Circuit law to list its LIBOR claim *before* confirmation.

The Fifth Circuit has recognized "that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."  In re Coastal Plains, 179 F.3d at 207-08 (5th Cir. 1999) (emphasis omitted).  Therefore, "a debtor is required to disclose all potential causes of action."  Id. at 208 (quoting Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)).  A claim suggested by available information is enough:

> The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed.

Id. (quoting Youngblood, 932 F. Supp. at 867).  The debtor's duty to disclose a potential legal claim thus arises before the debtor has actual knowledge of a ripened cause of action.

Like other courts, the Fifth Circuit thus recognizes that "the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*."  Id. (emphasis in original) (quoting Rosenshein v. Kleban, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)); see also Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) ("Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets . . . .").

Prior to confirmation of the bankruptcy plan in October 2011, sufficient information was available to BPP to require listing a potential cause of action

against the defendants based on LIBOR fraud.  For example, in May 2011, RBS publicly disclosed in a Form 6-K filing that U.S. and European regulators were "conducting investigations" into LIBOR manipulation, and that "RBS Group is co-operating with these investigations."  J. App'x at 540.  On the previous appeal to this Court, BPP's brief stated that BPP "did not have notice of fraud *by RBS* until RBS made a public disclosure in May 2011 that it had been implicated in LIBOR fraud."  Br. for Plaintiffs-Appellants at 23, BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 603 F. App'x 57 (2d Cir. 2015).  In the current appeal, BPP argues that this statement should not constitute a binding admission that it had requisite notice as of May 2011.  Even so, the statement demonstrates that BPP itself recognized that RBS's disclosure raised a red flag about the bank's possible involvement in LIBOR fraud, which is highly relevant under Fifth Circuit law regarding a bankrupt's duty to disclose causes of action.

Moreover, numerous news articles had reported on the possibility of LIBOR fraud before the bankruptcy plan had been confirmed, some of them years before.  The district court found that by May 2008, "there were at least seven articles in major publications reporting that there was substantial evidence to support the conclusion that LIBOR was artificially low and had been so for some time."  BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC, No. 13 Civ. 0638 (JMF), 2013 WL 6003701, at *8 (S.D.N.Y. Nov. 13, 2013), vacated in part 603 F. App'x 57 (2d Cir. 2015).  Several of those articles (appearing in The Wall Street Journal) included graphics showing that RBS participated in setting LIBOR and suggesting that RBS's participation resulted in lowering the rate--the very premise of plaintiffs' fraud claims here.[3]  Id. at *9.

---

[3]  In the previous appeal in this case, we stated that the district court had acted "too hastily" in concluding, based in part on these newspaper reports, that BPP should have been aware of its potential LIBOR-fraud claims.  BPP Illinois, 603 F. App'x at 58-59.  In that appeal, however, we considered a different question under a different body of law.  The issue was whether BPP had sufficient inquiry notice under the relevant Pennsylvania statute of limitations.  Id.  That question turned on when the plaintiff "reasonably should [have] know[n] that he ha[d] been injured and that his injury ha[d] been caused by another party's conduct."  Id. at 58 (quoting Crouse v. Cyclops Indus., 560 Pa. 394, 404 (2000)).  In this

Furthermore, RBS had been sued for LIBOR manipulation (by others) before the plan had been confirmed.  See, e.g., Compl. ¶¶ 13, 22, 33, 99, Ravan Invs., LLC v. Bank of Am. Corp., No. 11-cv-3249 (S.D.N.Y. filed May 13, 2011); Compl. ¶¶ 1, 5-7, FTC Capital GMBH v. Credit Suisse Grp. AG, No. 11-cv-2613 (S.D.N.Y. filed Apr. 15, 2011).  These lawsuits suggest that BPP should have known sufficient facts to include a possible LIBOR-fraud claim against RBS on its list of assets.

Accordingly, under Fifth Circuit law, the kind of LIBOR-fraud claim that BPP seeks to assert now was "a 'known' cause of action" at the time of confirmation, so that BPP's failure to list it in the schedule of assets is equivalent to a representation "that none exist[s]."  In re Coastal Plains, 179 F.3d at 208, 210.

**B. <u>Adoption</u>**.  Judicial estoppel does not apply unless "the party's former position has been adopted in some way by the court in the earlier proceeding." In re Adelphia Recovery Trust, 634 F.3d at 695-96.  "'[A]doption' in judicial estoppel 'is usually fulfilled . . . when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor.'" Adelphia Recovery Trust v. Goldman, Sachs & Co., 748 F.3d 110, 118 (2d Cir. 2014) (quoting Galin v. United States, No. 08-CV-2508 (JFB) (ETB), 2008 WL 5378387, at *10 (E.D.N.Y. Dec. 23, 2008)).  Accordingly, the bankruptcy court "adopted" BPP's position that it had no LIBOR-fraud claim against RBS when the bankruptcy court confirmed the plan.

**C**. <u>**Advantage**</u>.  This Court often limits the application of judicial estoppel to cases in which "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."  In re Adelphia Recovery Trust,

---

appeal, controlled by Fifth Circuit bankruptcy precedents, the question is whether "the debtor has enough information prior to confirmation to suggest that it may have a possible cause of action."  In re Coastal Plains, 179 F.3d at 208. The tests are different, and a bankruptcy debtor in the Fifth Circuit could be required to list a cause of action in its schedule of assets even though the same debtor would not be deemed to have inquiry notice of his injury for purposes of the Pennsylvania statute of limitations.

634 F.3d at 696.  Although we do not always require a showing of unfair advantage, see Adelphia Recovery Trust v. Goldman, Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014), the showing has been made in this case.  Regardless of whether (or not) BPP actually knew of its possible LIBOR claims, and whether (or not) the claims were of great value, BPP's assertion of the claims now would allow it to enjoy an unfair advantage at the expense of its former creditors, who had a right to consider the claims during the bankruptcy proceeding.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 418 (3d Cir. 1988) ("We can assume that revealing the potential action may also have impacted upon the bank's decision . . . to vote for confirmation.").[4]

## IV

The FFC Plaintiffs and Equity Plaintiff appeal the district court's decision denying their request for leave to amend.  We affirm the district court's decision on the ground of timeliness.

"Where . . . a scheduling order governs amendments to the complaint," and a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must show good cause to modify the deadline under Rule 16.  Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) ("Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'  Whether good cause exists turns on the diligence of the moving party." (citations and quotation marks omitted)); Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003).

---

[4] Sometimes we impose an additional condition, requiring the impact "of inconsistent results . . . on judicial integrity [to be] certain."  In re Adelphia Recovery Trust, 634 F.3d at 696 (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010)).  This condition is satisfied "where the earlier tribunal accepted the accuracy of the litigant's statements."  Id.  By confirming the plan, the bankruptcy court relied on BPP's schedule of assets, thereby implicitly (but categorically) accepting the accuracy of BPP's list of assets.

In this case, plaintiffs offer three reasons for their delay in amending. First, plaintiffs rely on the district court's scheduling order, which prohibited amendments after a certain date. The order, however, was a joint proposed scheduling stipulation signed by both parties. Plaintiffs cannot argue that their own proposed restriction on amendments, or their adherence to it, should now allow them to amend later than usual.

Second, plaintiffs cite the district court's local rule. The rule provided that if, after a motion to dismiss, "the plaintiff elects not to amend its pleading, no further opportunities to amend to address the deficiencies identified by the motion to dismiss will be granted." Appellant's Br. at 44 n.6. By its terms, the rule does not address the situation here, where the plaintiffs *did* amend their complaint in response to a motion to dismiss. We review a district court's decision to deny leave to amend based on a violation of a scheduling order for abuse of discretion, <u>Grochowski</u>, 318 F.3d at 86, and in light of the fact that the local rule did not facially prohibit the plaintiffs from amending, we see no abuse of discretion in the district court's decision that the local rule did not provide "good cause" for the plaintiffs' failure to timely amend.

Last, plaintiffs argue that the court was aware of the facts needed to make their pleadings state a claim, even though those facts were not actually in the pleadings. This argument is meritless. Rule 9(b) creates a pleading standard, not an evidentiary standard. <u>See, e.g.</u>, <u>United States ex rel. Ladas v. Exelis, Inc.</u>, 824 F.3d 16, 25-26 (2d Cir. 2016) ("To satisfy this Rule, a *complaint* alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" (emphasis added)). A deficient complaint cannot be justified because the parties or the court knew the facts that should have been alleged.

In sum, plaintiffs have not shown good cause for an untimely amendment, and the district court properly denied leave to amend.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.

10