17-1727-cv
*Clark v. Advanced Composites Grp.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2017

Argued: December 12, 2017
Decided: March 30, 2018

No. 17-1727-cv

Michele Clark, Individually and as Representative of the
Estate of John Clark,[1]

*Plaintiff-Appellant,*

*v.*

AII Acquisition, LLC, AWC 1997 Corporation, Crane Co., Domco
Products Texas, LP, Eaton Aeroquip LLC, General Cable
Industries, Inc., General Gasket Corp., Goodrich Corporation,
FKA B.F. Goodrich Company, Industrial Holdings Corporation,
FKA Carborundum Corporation, Lockheed Martin Corp.,
McDonnell Douglas Corporation, Navistar, Inc., FKA
International Truck and Engine Corporation, Pecora
Corporation, Pfizer Inc., Pirelli Inc., Pirelli Tire, LLC, Pneumo
Abex Corporation, Saint-Gobain Abrasives, Inc.,

*Defendants-Cross Defendants-Appellees,*

The Boeing Company, BorgWarner Morse Tec LLC, CBS
Corporation, General Electric Company, Goodyear Canada,
Inc., Goodyear Tire and Rubber Company, Harco LLC, FKA
Harco Laboratories, Inc., Henkel Corporation, Hollingsworth

---

[1] We grant Mrs. Clark's request to be substituted as the Representative of the Estate of John Clark and direct the Clerk of Court to amend the caption as above.

& Vose Company, IMO Industries, Inc., Lennox Industries Inc., Mine Safety Appliance Company, LLC, Parker Hannifin Corporation, United Technologies Corporation, Prysmian Cables and Systems USA, LLC, FKA Pirelli Cable Corporation,

*Defendants-Cross Defendants-Cross Claimants-Appellees,*

Advanced Group Composites, Inc., CertainTeed Corporation, Georgia-Pacific LLC, Rockwell Automation, Inc., as successor in interest to Allen-Bradley Company, LLC, Union Carbide Corporation, Welco Manufacturing Company, Wyeth Holdings LLC,

*Defendants-Cross Defendants-Cross Claimants,*

Ciba-Geigy Corporation, Curtiss-Wright Corporation, Eaton Corporation, E.V. Roberts Headquarters, FMC Corporation, Greene, Tweed & Co., Hitco Carbon Composites, Inc., Kaiser Gypsum Company Inc., Northrop Grumman Systems Corporation, Schneider Electric, USA, Inc., FKA Square D Company, Trane U.S. Inc., FKA American Standard Inc., BMCE, Inc., Aerco International Inc., Basf Corporation,

*Defendants-Cross Defendants.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 16-cv-6422 – George B. Daniels, *District Judge.*

————

Before: Jacobs, Calabresi, and Chin, *Circuit Judges.*

————

Plaintiff-Appellant Michele Clark appeals from an April 28, 2017 judgment of the United States District Court for the Southern District of New York (Daniels, *J.*) dismissing her personal injury claims against more than fifty corporate defendants. We hold that the district court abused its discretion in invoking the equitable doctrine of judicial estoppel to dismiss her claims. Accordingly, we vacate and remand for further proceedings.

2

ALANI GOLANSKI (Robert E. Shuttlesworth, Shrader & Associates, LLP, Houston, TX, *on the brief*) Alani Golanski, Esq., New York, NY, *for Plaintiff-Appellant*.

MARTIN F. GAYNOR III (Brian D. Gross, Matthew T. Giardina, Jr., Manion Gaynor & Manning LLP, Providence, RI, Amaryah K. Bocchino, Stephan D. Dargitz, Manion Gaynor & Manning LLP, Wilmington, DE, *on the brief*), Manion Gaynor & Manning LLP, Boston, MA, *for Defendant-Appellee The Boeing Company.*[2]

BRADLEY M. WANNER (Abbie Eliasberg Fuchs, *on the brief*), Harris Beach, PLLC, New York, NY, *for Defendant-Appellee Prysmian Communications Cables & Systems USA, LLC*.

CALABRESI, *Circuit Judge*:

In 2015, John Edward Clark was diagnosed with mesothelioma, a cancer caused by the inhalation of asbestos fibers. At that time, Mr. Clark was nearing completion of a Chapter 13 bankruptcy plan that he and his wife, Michele, had entered into in 2010. Although the Clarks fulfilled their last remaining obligations under the plan within a matter of weeks, their bankruptcy proceeding remained formally

---

[2] Boeing's brief was joined by United Technologies Corporation, AII Acquisition, LLC, Pecora Corporation, AWC 1997 Corporation, BorgWarner Morse Tec LLC, CBS Corporation, General Electric Company, Crane Co., Eaton Aeroquip LLC, General Cable Corporation, Goodrich Corporation, FKA B.F. Goodrich Company, The Goodyear Tire & Rubber Company, Goodyear Canada, Inc., Harco, LLC, i/s/h/a Harco Laboratories, Inc., Henkel Corporation, Lennox Industries Inc., Mine Safety Appliance Company, LLC, Lockheed Martin Corp., Navistar, Inc., FKA International Truck and Engine Corporation, and Pneumo Abex LLC.

open for another full year before finally coming to a close on August 5, 2016. One week prior to their discharge from that proceeding, the Clarks initiated the present suit: a personal injury action against The Boeing Company and a host of other corporations they believed had exposed Mr. Clark to asbestos.

Boeing soon thereafter moved to dismiss the Clarks' personal injury suit on grounds of judicial estoppel. According to Boeing, the couple's failure to disclose Mr. Clark's diagnosis during bankruptcy bars them from pursuing personal injury claims related to that diagnosis now. The district court agreed, granting Boeing's motion and dismissing the Clarks' claims with prejudice.

Mr. Clark died during the pendency of the couple's appeal to this court. But we grant to Mrs. Clark what relief we can: the April 28, 2017 judgment of the district court granting Boeing's motion to dismiss is **VACATED,** and the case **REMANDED** for further proceedings.

## I.

By early 2010, the Clarks found themselves more than $100,000 in debt.[3] Seeking to regain their financial footing, the couple filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the

---

[3] Because this case comes to us on an appeal of a motion to dismiss, "the following facts drawn from plaintiffs' complaint are presumed true, and are presented in the light most favorable to plaintiffs." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 354 (2d Cir. 2015).

District of Connecticut. Under the Clarks' proposed bankruptcy plan ("the Plan"), the couple agreed to repay their creditors in full, with interest at the federal judgment rate, over five years through monthly payroll deductions.[4] *See* 28 U.S.C. § 1961. If all conditions were met, the Clarks would emerge from bankruptcy at the end of that period debt free. Following a confirmation hearing held in July 2010, the bankruptcy court set the Plan in motion.

For nearly five years, everything went as planned. Each month $2,152 was deducted from Mr. Clark's paycheck from his then employer, Boeing, and each month the couple inched closer to a discharge from bankruptcy. Then, only a few weeks before the Clarks' sixtieth (and final) monthly deduction was taken in July 2015,[5] tragedy struck: Mr. Clark was diagnosed with mesothelioma.

Mr. Clark immediately suspected that the culprit was asbestos exposure, which he had suffered during his two decades of service in the United States Air Force and in his subsequent private sector employment. Soon after being diagnosed, Mr. Clark decided to bring suit against the corporations he believed responsible for exposing him to the known carcinogen. Mr. Clark—unsure of whether his

---

[4] Certain debts, such as Mr. Clark's student debt and home mortgage, were not included as part of the couple's Chapter 13 bankruptcy restructuring.

[5] There was a factual dispute before the district court as to when exactly the Clarks completed payment under the Plan. Because this case comes to us on a motion to dismiss (and because Boeing does not argue on appeal that payment was completed after July 2015), we accept the Clarks' chronology.

bankruptcy asset schedules needed to be updated to reflect his diagnosis and intention to litigate—alerted his bankruptcy counsel to this information and "trusted him to do what was required under the law." Aff. of John Edward Clark ¶ 14 (Feb. 3, 2017). Mr. Clark's counsel, however, never passed this information along to the bankruptcy court during the pendency of the Clarks' bankruptcy proceeding.

On July 29, 2016, the Clarks filed a personal injury action in New York state court against more than fifty corporate defendants, including Boeing.[6] One week later, with every creditor having been paid in full, the couple received a final discharge from bankruptcy.

After the Clarks' personal injury suit was removed to federal court,[7] Boeing moved to dismiss. In its motion,[8] Boeing argued that the suit was barred by the equitable doctrine of judicial estoppel, which "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369

---

[6] The Clarks had previously filed a short-lived action in Illinois state court. The Clarks voluntarily dismissed this first suit after (i) several defendants were dismissed for want of personal jurisdiction; and (ii) Boeing notified the Clarks that it planned to file a motion to dismiss. Boeing does not base its assertion of judicial estoppel in the present suit on this earlier filing, which, like the present action, was brought after the Clarks had completed payment under the Plan.

[7] The suit was removed by Lockheed Martin to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1442.

[8] This motion was ultimately joined by numerous defendants. For ease of understanding, we refer solely to Boeing throughout this opinion.

F.3d 113, 118 (2d Cir. 2004). According to Boeing, the couple's failure to disclose Mr. Clark's diagnosis during bankruptcy estops them from pursuing personal injury claims related to that diagnosis forever thereafter.[9]

The district court agreed. Characterizing judicial estoppel as a "harsh rule," it granted Boeing's motion on April 28, 2017, and dismissed this suit in its entirety. *Clark v. Advanced Composites Grp.* et al., 2017 WL 2266981, at *5 (S.D.N.Y. April 28, 2017). The Clarks timely appealed on May 26, 2017. Mr. Clark succumbed to his illness approximately six months later on November 24, 2017.

## II.

There has been some uncertainty in this circuit as to the proper standard by which to review a district court's decision to invoke judicial estoppel. This uncertainty can be traced back to our decision in *Uzdavines v. Weeks Marine Inc.*, 418 F.3d 138 (2d Cir. 2005), where we indicated in passing that whether judicial estoppel applies "is a pure question of law, which we review de novo." *Id.* at 143 (emphasis removed). In subsequent decisions, we have taken pains to note that we are not bound by our dicta to this effect in *Uzdavines*.[10] But because

---

[9] The parties variously focus on the key date as the onset of Mr. Clark's diagnosis, or the onset of litigation. Another possibly relevant date is the discovery that Mr. Clark's disease was actionable. The first thing one does on receiving a fatal diagnosis is not usually to seek consultation with one's bankruptcy counsel.

[10] *See Intellivision v. Microsoft Corp.*, 484 Fed. App'x 616, 618 (2d Cir. 2012) (summary order); *Welfare Fund v. Bidwell Care Ctr., LLC*, 419 Fed. App'x 55, 59 n.6

we were able to "affirm the district court under de novo review" in those cases, we declined to "consider whether a more deferential standard should apply." *BPP Ill., LLC v. Royal Bank of Scot. Grp. LLC*, 859 F.3d 188, 191 (2d Cir. 2017). It is time we put this uncertainty to rest: today we hold that a district court's invocation of judicial estoppel is reviewed only for abuse of discretion.

Abuse of discretion review is a "natural fit" for the judicial estoppel doctrine, which has a somewhat "amorphous nature." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31 (1st Cir. 2004). While the doctrine functions generally to bar litigants from taking inconsistent positions in successive suits, "the exact criteria for invoking judicial estoppel will vary based on specific factual contexts." *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (internal quotation marks omitted). The district court is the "judicial actor . . . better positioned" to determine whether the criteria for invoking judicial estoppel have been met within the particular factual context of a given case, *Miller v. Fenton*, 474 U.S. 104,

---

(2d Cir. 2011) (summary order). In *Uzdavines*, this court declined to disturb the National Labor Relation Board's decision not to apply judicial estoppel. We noted (i) that the party to be estopped did "not tak[e] an 'inconsistent' position," (ii) that the position in question "did not confer 'an unfair advantage'" and (iii) that "equity [did] not suggest, much less require," that judicial estoppel be applied. *Uzdavines*, 418 F.3d at 148. Because the issue of the appropriate standard of review was not briefed in the case (and because the *Uzdavines* Court plainly would have upheld the Board's determination under any standard), our passing reference to de novo review was dicta.

114 (1985), as well as whether a lesser sanction would suffice to address a litigant's lack of candor. *See Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999) ("Judicial estoppel is [but] one arrow in the quiver of sanctions at a court's disposal.").

Nearly every other circuit has likewise held that abuse of discretion is the appropriate standard in this context.[11] Even the one holdout—the Sixth Circuit—has recently "questioned the continuing viability" of de novo review in light of the Supreme Court's characterization of judicial estoppel as "an equitable remedy 'invoked by a court at its discretion.'" *Javery v. Lucent Tech., Inc.*, 741 F.3d 686, 697 (6th Cir. 2014) (internal citation omitted)).

While deferential, abuse of discretion review is not a rubber stamp. A district court may not "do inequity in the name of equity." 27A AM. JUR. 2D EQUITY § 84 (2012). And we will overturn a district court's decision to invoke judicial estoppel that, "though not necessarily the product of a legal error or a clearly erroneous factual

---

[11] *See, e.g., Alt. Sys. Concepts*, 374 F.3d at 31; *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996); *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 457 (4th Cir. 2017); *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014); *Gronchocinksi v. Mayer Brown*, 719 F.3d 785, 797 (7th Cir. 2013); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046-47 (8th Cir. 2006); *United States v. Garcia,* 37 F.3d 1359, 1366-67 (9th Cir. 1994); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *Talavera v. Sch. Bd.*, 129 F.3d 1214, 1216 (11th Cir. 1997); *Marshall v. Honeywell Tech. Sys., Inc.*, 828 F.3d 923, 928 (D.C. Cir. 2016); *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States,* 593 F.3d 1346, 1351 (Fed. Cir. 2010).

finding[,] cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

**III.**

The question before us, then, is whether the district court abused its discretion in invoking judicial estoppel against the Clarks. We conclude that it did. We take it as axiomatic that judicial estoppel—an equitable doctrine—is to be construed in light of equitable principles. It seems equally evident to us that the balance of equities tips overwhelmingly in the Clarks' favor. And yet, the district court found judicial estoppel to be required. What went wrong?

The district court's April 28, 2017 judgment dismissing this suit started off on the right foot. It began by noting that the party asserting judicial estoppel must show (i) that "the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding" and (ii) that "that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Clark*, 2017 WL 2266981, at *4 (quoting *Robinson v. Concentra Health Serv., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015)). As to the first element, the district court held that the Clarks' failure to disclose their personal injury causes of action to the bankruptcy court amounted to an implicit false representation that no such causes of action existed. *Id*. As to the second element, the district court reasoned that the bankruptcy court "adopted" the Clarks' inconsistent position by

10

"rendering a favorable judgment"—i.e., by discharging them from bankruptcy. *Id*.

Having satisfied itself that the Clarks met the judicial estoppel doctrine's two prerequisite elements, the district court held *ipso facto* that the couple's personal injury claims must be estopped. And therein lies the district court's error: judicial estoppel is not a mechanical rule. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules.").

That a litigant (i) took a prior inconsistent position and (ii) convinced an earlier tribunal to adopt that position may be *necessary* conditions for judicial estoppel to be imposed, but they are not *sufficient* ones. Before judicially estopping a litigant, a court must inquire into whether the particular factual circumstances of a case "tip the balance of equities in favor" of doing so. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

Our cases make clear that this inquiry begins by asking whether the prior inconsistent position in question gave the party to be estopped an "unfair advantage" over the party seeking estoppel. *BPP Ill.*, 859 F.3d at 192. The answer here is that Boeing concedes that it was in no way prejudiced by the Clarks' failure to disclose their personal injury causes of action to the bankruptcy court.

While significant, this concession does not end the inquiry. *See, e.g.*, *Adelphia*, 748 F.3d at 116 ("Although we have recognized that

11

typically the application of judicial estoppel requires showing unfair advantage against the party seeking estoppel, we have not required this element in all circumstances." (internal quotation marks and brackets omitted)). We have been particularly apt to overlook the general requirement that a party seeking estoppel have suffered prejudice where, as here, the party to be estopped failed to make the proper disclosures during bankruptcy.[12] In such circumstances, this court has justified the imposition of judicial estoppel in part on the unfair advantage the estopped party may have gained over "former creditors, who had a right to consider the [undisclosed] claims" during bankruptcy. *BPP Ill.*, 859 F.3d at 194.

As we have previously noted, however, this rationale cannot extend to the "unusual case" in which a debtor's nondisclosure had at most a "*de minimis* effect" on a prior bankruptcy proceeding. *Adelphia*, 748 F.3d at 120. This is just such a case. As the Standing Trustee for the District of Connecticut certified in an affidavit submitted on the Clarks' behalf, disclosure "would not have altered the outcome" of the couple's bankruptcy proceeding. Aff. of Molly T. Whiton ¶ 5 (Mar. 20, 2017).

---

[12] *Accord* W. HOMER DRAKE, JR. ET AL., CHAPTER 13 PRACTICE & PROCEDURE § 16:7 (2017) ("Courts have concluded . . . that the debtor's failure to disclose a cause of action gives her an unfair advantage because it permits her to obtain the full benefit of the recovery to the detriment of her creditors.").

This is because the Plan already required the Clarks to repay their creditors in full. Disclosing Mr. Clark's diagnosis to the bankruptcy court would therefore have only affected the couple's bankruptcy proceeding if their creditors were able to convince the bankruptcy court to raise the applicable interest rate under the Plan. Given that the Clarks were mere weeks away from completing repayment at the time of Mr. Clark's diagnosis, and were already paying interest at a standard rate, this scenario strikes us as more than implausible.[13]

Boeing does not seriously dispute any of these facts.[14] Instead, it urges that, because "judicial estoppel protects the sanctity of the oath and the integrity of the judicial process," there are cases in which a court may properly invoke the doctrine even in response to a prior inconsistent position that had only a *de minimis* effect. *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993). The point is well taken. We do not deny that there may be unusual circumstances in which the need to safeguard the integrity of the courts may tip the

---

[13] Boeing gestures at the possibility that additional creditors might have sought to intervene in the Clarks' bankruptcy proceedings if Mr. Clark's diagnosis had been timely disclosed. Because Boeing does not show that any such creditors actually existed (or give any reason to think the bankruptcy court would have allowed any such creditors to intervene so late in the course of bankruptcy), this assertion seems too remote to warrant serious consideration.

[14] *See* Boeing Br. at 15 n.4 (dedicating only a single footnote to arguing that the Clarks' nondisclosure had more than a *de minimis* impact on their bankruptcy proceeding).

equities in favor of judicial estoppel even when the inconsistency in question made no material difference.

But this case is surely not of that sort. Nothing in the record before us suggests that the Clarks withheld Mr. Clark's diagnosis from the bankruptcy court in an effort to game the bankruptcy system. Indeed, it is hard to see what benefit they could even have hoped to obtain from nondisclosure. In these circumstances, we hold that the principles of equity require the courts to entertain Mrs. Clark's personal injury claims.

To be clear, we are not giving unscrupulous litigants the green light to play "fast and loose with the courts." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000). Nor do we wish to hamper district courts who deem judicial estoppel necessary to ensure the "full disclosure by debtors" that is "essential to the proper functioning of the bankruptcy system." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). But to hold on the facts of this case that Mrs. Clark's claims are barred by an equitable doctrine would be to deprive the concept of equity of any meaning. The district court's April 28, 2017 judgment granting Boeing's motion to dismiss is **VACATED**, and the case **REMANDED** for further proceedings.[15]

---

[15] Because we vacate the district court's judgment dismissing this case, we need not reach the Clarks' argument that their suit should not be estopped against Prysmian Communications Cables & Systems USA, LLC, which did not join Boeing's motion to dismiss.